In re CAUCUS DISTRIBUTORS, INC., Alleged Debtor.

In re CAMPAIGNER PUBLICATIONS, INC., Alleged Debtor.

In re FUSION ENERGY FOUNDATION, INC., Alleged Debtor.

Bankruptcy Nos. 87–00795–A to 87–00797–A.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

March 8, 1988.

David R. Kuney, Christine L. Dibble, David & Hagner, and James A. Bensfield, Raymond D. Battocchi, Cole and Groner, P.C., and Richard H. Gins, Brian R. Seeber, Gins & Seeber, P.C., Washington, D.C., and

H. Jason Gold, Gold & Stanley, Alexandria, Va., for the alleged debtors.

S. David Schiller, Asst. U.S. Atty., Office of U.S. Atty. for E.D. Virginia, Richmond, Va., for the U.S.

Robert O. Tyler, Alexandria, Va., Trustee in Bankruptcy for Caucus Distributors, Inc.

Roy B. Zimmerman, Alexandria, Va., for Robert O. Tyler, Trustee.

James M. Lewis, McLean, Va., Trustee in Bankruptcy for Campaigner Publications, Inc.

H. Slayton Dabney, McGuire, Woods, Battle & Boothe, Richmond, Va., for James M. Lewis.

Kermit A. Rosenberg, McLean, Va., Trustee in Bankruptcy for Fusion Energy Foundation, Inc.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter comes before the Court on a motion by the United States requesting summary judgment on the involuntary chapter 7 bankruptcy petitions filed against Caucus Distributors, Inc., Campaigner Publications, Inc., and Fusion Energy Foundation, Inc. ("alleged debtors") under § 303 of the Bankruptcy Code ("the Code"). 11 U.S.C. § 303 (1984) (amended 1986). In 1985, a grand jury was empanelled to investigate the alleged debtors' involvement in possible credit card fraud. When subpoenaed to testify before the grand jury and provide documentary evidence, the debtors failed to cooperate. The debtors' conduct resulted in the initiation of contempt proceedings to which the debtors did not respond, and fines were imposed totalling approximately 16–million dollars. The alleged debtors repeatedly refused to pay the contempt fines, which prompted the United States to file chapter 7 involuntary bankruptcy petitions with respect to all three alleged debtors on April 20, 1987.

Since the filing of the petitions, the United States has attempted to obtain evidence through normal discovery channels, including a list of creditors, but the alleged debtors through representative individuals have invoked the Fifth Amendment to prevent self-incrimination.

As this matter comes before the Court on a motion for summary judgment, we note first that the basis upon which we may issue judgment is definitively outlined by Federal Rule of Civil Procedure 56 ("Rule 56"), made applicable to this proceeding by Bankruptcy Rule 7056. Thus, we look first to the constraints placed on this Court by the rule itself. A movant is entitled to summary judgment if "there is no genuine issue as to any material fact and the [movant] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment may or may not be supported by affidavits. Fed.R.Civ.P. 56(a). The defending party may or may not file opposing affidavits. Fed.R.Civ.P. 56(b). A court necessarily bases its ruling on the parties' pleadings, depositions, answers, interrogatories, admissions on file, and any affidavits. Fed.R.Civ.P. 56(c).[1]

All affidavits must be made on the basis of personal knowledge of the affiant and must set forth such facts that would be admissible in evidence and show how the affiant is competent to testify on the matters included therein. *Id.; see also Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972) (absence of affirmative showing of personal knowledge of specific facts vitiates the sufficiency of an affidavit for the purposes of summary judgment). If the affiant refers to any documents in his statement, sworn or certified copies of those documents must be attached. Fed.R. Civ.P. 56(e). If the movant for summary judgment supports his motion as provided by Rule 56, the adverse party may not rest on the mere allegations or denials of the adverse party's pleading, the adverse party must respond by setting forth specific facts

---

**1.** Rule 56 is generally interpreted as enabling a court to consider exhibits not specifically enumerated in the Rule but evaluated as being an exhibit admissible in evidence or otherwise usable at trial. *See Association for Reduction of Violence v. Hall*, 734 F.2d 63, 67 (1st Cir.1984) citing 6 J. Moore, W. Taggart, & J. Wicker, Moore's Federal Practice, ¶ 56.11[1.8] at 56–105 —56–207 (1983) (hereinafter "Moore's Federal Practice").

showing that there is a genuine issue for trial. *Id.* If the adverse party does not respond, summary judgment shall be entered, unless the adverse party states (by affidavit) that he is unable to present (by affidavit) facts that are essential to justify the party's opposition. Fed.R.Civ.P. 56(e), (f).

The party requesting summary judgment has the burden of showing no genuine issue as to a material fact exists, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970); *In re Manchester Lakes Associates,* 47 B.R. 798, 800 (Bankr.E.D.Va.1985); *In re McEvoy,* 37 B.R. 197, 199 (Bankr.E.D.Va.1984), and a court generally must consider the record in a light more favorable to the adverse party. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *In re McEvoy,* 37 B.R. at 199. Justice Brennan in his dissenting opinion in *Celotex Corp v. Catrett* with whom Chief Justice Burger and Justice Blackman joined, explained, "[the movant's] burden has two distinct components: an initial burden of production, which shifts to the non-moving party if satisfied by the moving party, and the ultimate burden of persuasion which always remains with the moving party." 477 U.S. 317, 106 S.Ct. 2548, 2556, 2559, 91 L.Ed.2d 165 (1986) (noting that the general discussion of summary judgments was not inconsistent or different from the majority opinion).

The Fourth Circuit has properly recognized that courts faced with motions for summary judgment must proceed cautiously. *See Magill v. Gulf and Western Indus. Inc.,* 736 F.2d 976, (4th Cir.1984). In *Magill v. Gulf and Western Indus.* the court held that "even if there is no dispute as to the evidentiary facts, summary judg-

ment is inappropriate if differing conclusions could be drawn from the same facts." *Id.* at 979. The *Magill* court also observed summary judgments are seldom appropriate when issues involve the adverse party's state of mind, knowledge, or depend on the credibility of witnesses. *Id.* Providing guidance for lower courts, the Fourth Circuit in summary stated:

> Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented.

*Id.* (*citing Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

In a recent discussion of Rule 56, the United States Supreme Court stated "summary judgment should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (citations omitted); *see* 6 Moore's Federal Practice ¶ 56.23 (2d ed. 1987) at 56–1394 (all factual inferences must be taken against the moving party and in favor of the opposing party).

It is in consideration with the aforementioned guidelines that we review the government's unusual request to grant its motion for summary judgment based, in part, on the adverse inferences drawn from the alleged debtors' failure to respond sufficiently to the United States' discovery requests on the basis of the Fifth Amendment.[2]

---

**2.** The Fifth Amendment provides in part that "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The alleged debtors have repeatedly denied having invoked the Fifth Amendment privilege because they are corpora-

tions. *See Afro–Lecon, Inc., v. United States,* 820 F.2d 1198, 1206 (Fed.Cir.1987) (it is well settled that a corporation does not possess a Fifth Amendment right against self-incrimination). The alleged debtors have invoked the privilege, permissibly or impermissibly, however, through

In support of its request, the government cites several cases which allegedly permit a court to draw adverse inferences in view of a defendant's invocation of the Fifth Amendment in civil suits. *See Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) (our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties in civil actions when they refuse to testify in response to probative evidence offered against them); *United States v. Ianniello*, 824 F.2d 203, 208 (2d Cir.1987) (negative inference drawn from the refusal of any of the defendants to answer questions on material issue was permissible in civil context, such a negative inference does not violate the Fifth Amendment); *United States v. Local 560 of International Brotherhood of Teamsters, Etc.*, 780 F.2d 267, 292, n. 32 (3rd Cir.1985) (finder of fact may draw an adverse inference from a party's invocation of his Fifth Amendment right against self-incrimination, citing *Baxter*), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 929 (7th Cir.1983) (there is no longer any doubt that in civil trials a defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination); *Chase Manhattan Bank, N.A. v. Frenville*, 67 B.R. 858, 862 (Bankr.D.N.J.1986) (a court may draw an adverse inference in a civil matter where the party refuses to testify in response to probative evidence offered against him); *In re Crabtree*, 39 B.R. 718, 725 (Bankr.E.D.Tenn.1984) (adverse inferences may be drawn in a civil action against a party who refuses to testify in response to probative evidence on the basis of constitutional privilege). The government alleges that the only prerequisite to drawing negative inferences is that a court must ascertain whether there is on the record independent evidence of the fact inferred. *See Baxter*, 456 U.S. at 318, 96 S.Ct. at 1557. The government adds that courts interpreting *Baxter* have required merely that the independent evidence be "adverse", *see Bathalter*, 705 F.2d at 930, and "probative", *see Ianniello*, 824 F.2d at 208.

The alleged debtors maintain that they have complied with the discovery as best they can given their firm belief that no individual associated with the corporations is able to testify for fear of self-incrimination.[3] Consequently, the alleged debtors argue that their decision to invoke the Fifth Amendment should not be challenged by the use of negative inferences noting that the privilege would be "watered down" if such a result were imposed. *See Bathalter*, 705 F.2d at 929. At the most, however, the alleged debtors maintain negative inferences may only be drawn if a "substantial" amount of admissible evidence to establish the United States' case is before the court. *See In re Einhorn.* 29 B.R. 966, 970 (Bankr.E.D.N.Y.1983).

The court at the outset notes that the standards and burden on a movant requesting summary judgment as defined by Rule 56, the Fourth Circuit, and the United States Supreme Court are clear. The movant must first comply with the requirement that he provide evidence establishing no genuine issue of any material fact, *before* the burden of production shifts to the adverse party. At *that* point if the adverse party does not respond, or responds inadequately, "summary judgment if appropriate shall be entered." Fed.R.Civ.P. 56(e). Therefore, there is no question that the United States must first introduce independent evidence establishing its cause of action before a negative inference may be drawn, the only question remaining is how much evidence is sufficient to trigger the consideration of such an inference.[4]

the individuals who were asked to respond to the discovery requests. *See* Government Exhibits Nos. 1, 2 and 29.

**3.** The alleged debtors in the instant case filed an affidavit through their attorneys stating that they are unaware of any person who would

have information that would permit them to respond to the discovery requests.

**4.** In all but one of the cases cited by the government to support its request that the Court draw negative inferences, the court was not faced with a motion for summary judgment. In *Fren-*

■ At the summary judgment level, again the rules are clear. The movant first must establish all the elements of his case based on his pleading, depositions, affidavits, interrogatories and other admissible exhibits, without regard to the quantity or quality of the adverse party's response. A court may not draw inferences to fill in the gaps of the movant's case. *See* 6 Moore's Federal Practice ¶ 56.23 (2d ed. 1987) at 56–1394 (in reviewing a motion for summary judgment all factual inferences must be taken against the moving party and in favor of the opposing party). To do so in the instant case specifically because the adverse party has chosen to rely on the Fifth Amendment would abrogate a fundamental constitutional right.

It would appear that the thrust of the government's argument is to have this Court grant summary judgment as a procedural sanction. "The debtors ... have stonewalled all attempts at discovery. On this record, given the debtors' intransigence, summary judgment is appropriate." Government's Supplemental Memorandum at 2. "Only by drawing a negative inference can the Court control and deal with corporate debtors' apparent contempt for the Court and its rules." *Id.* at 6. The Supreme Court has consistently rejected attempts, however, to make the assertion of the Fifth Amendment privilege "costly", as a result of the invocation alone. *See National Acceptance Co. v. Bathalter,* 705 F.2d 927–30, *citing Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) (Fifth Amendment secures privilege to remain silent and to suffer no penalty for such silence); *Garrity v. New Jersey,* 385 U.S. 493, 495–98, 87 S.Ct. 616, 617–19, 17 L.Ed.2d 562 (1967) (determining statement of policeman compelled by threat of discharge could not be used in subse-

quent criminal proceeding); *see also Rockwood Computer Corp. v. Morris,* 94 F.R.D. 64, 67 (D.E.D.N.Y.1982) (granting summary judgment based solely on inferences from defendant's invocation of Fifth Amendment would be failure of constitutional protection).

Although the government cites *In re McEvoy,* 37 B.R. 197, 199 (Bankr.E.D.Va. 1985), a case decided here, for the proposition that the burden on a party moving for summary judgment is generally lessened in involuntary cases because of the need for speedy resolution, this court spoke in reference to the holding in *Matter of Covey,* 650 F.2d 877, 883–84 (7th Cir.1981), that favored the inclusion of disputed claims in most instances to facilitate the resolution of involuntary bankruptcy petitions, and not in reference to the initial burden of production in a motion for summary judgment. This court in the same opinion explicitly stated:

> The mere filing of an unopposed affidavit in support of a motion for summary judgment is not, of itself, sufficient to warrant entry of summary judgment. *See* Fed.R.Civ.P. 56(c). The party requesting summary judgment must still meet the burden in Rule 56(c) of the Federal Rules of Civil Procedure.

*Id.* at 200.

Consequently, we must first review the government's case only on the basis of those exhibits which have accompanied this motion and the alleged debtors' motion in opposition, without reference to the alleged debtors' invocation of the Fifth Amendment. Only if the United States is able to establish that there is no genuine issue as to any material fact from the basis of the evidence submitted in compliance with Rule 56, can we then consider whether adverse inferences indeed are appropriate.[5]

---

*ville,* the movant for summary judgment had satisfied its burden under Rule 56. *See* 67 B.R. at 861 (each of the movant's allegations is clearly and thoroughly documented). The few courts that have addressed the propriety of adverse inferences at the summary judgment stage, prior to the movant having sustained its burden, have unequivocally determined that such inferences would vitiate a constitutional privilege. *See Rockwood Computer Corporation*

*v. Morris,* 94 F.R.D. 64, 67 (E.D.N.Y.1982); *Antonio v. Solomon,* 42 F.R.D. 320, 322 (D.Mass. 1967); *In re Einhorn,* 29 B.R. 966, 970 (Bankr.E. D.N.Y.1983).

**5.** The government incorrectly cites *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as supporting the proposition that summary judgment is proper when the opposing party is silent. In *Celotex,* the movant for

Having stated the guidelines applicable to the evidence presented in the instant case, we now turn to a review of the United States' petition and determine whether it is appropriate to grant relief as a matter of law. In filing a chapter 7 involuntary bankruptcy petition, a creditor must allege that

1. He is a holder of a claim against [the alleged debtors],

2. That is not contingent as to liability, or

3. The subject of a bona fide dispute,

4. That is at least $5,000 more than the value of any lien on the property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(a), (b).

If all of the above are established, the court shall order relief against the debtor only if the creditor can establish that the debtor is generally not paying such debtor's debts as such debts become due, unless such debts are the subject of a bona fide dispute. *See* § 303(h).[6]

1. Is the United States a holder of a claim?

■ The alleged debtors first maintain that the $16–million dollar contempt fine should not be considered a debt for the purpose of an involuntary petition in bankruptcy. The alleged debtors argue that a criminal contempt fine may be considered a debt, while a civil contempt fine may not. *See Securities and Exch. Comm'n. v. Diversified Growth Corp.,* 595 F.Supp. 1159,

1171 (D.D.C.1984) (overwhelming authority holds that civil contempt fines are not debts). Therefore, what is of paramount importance is the characterization of the grand jury's fines. The alleged debtors then add that whether a contempt fine is civil or criminal is not a matter that can be clearly ascertained. *See In re Gedeon,* 31 B.R. 942, 945 (Bankr.D.Colo.1983). In fact, the alleged debtors further note that how a court characterizes a fine initially may not be necessarily dispositive. *See id.* Therefore, given a fact question pertaining to the nature of the "debt" at stake, a genuine issue as to a material fact exists for trial.

Although the alleged debtors have attempted to create an issue here, their focus is misplaced. The Code clearly states a:

"claim" means right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

11 U.S.C. § 101(4); *see* 2 *Collier on Bankruptcy,* ¶ 101.11 (15th ed. 1987) at 101–39 (for purposes of determining whether or not a debt is a claim, § 101(4) which defines "claim" should be consulted to decide whether debt gives rise to a right of payment and can qualify as a "claim").

The decisions cited by the alleged debtors examined the nature of a debt for reasons totally unrelated to involuntary bankruptcy petitions. *See Parker v. United States,* 153 F.2d 66, 70 (1st Cir.1946) (distinguishing civil and criminal contempt fines

---

summary judgment was the *defendant,* the party who did not bear the burden of persuasion at trial. In that case, the plaintiff remained silent rather than oppose the summary judgment motion because she was "unable to produce evidence in support of her allegation in her wrongful death complaint." 106 S.Ct. at 2551. The Court held that when the movant for summary judgment *does not* bear the burden of production at the summary judgment hearing, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case." *Id.* at 2554. The Court held that the defendant/movant need not support its motion with evidence tending to *negate* a crucial aspect of the plaintiff's cause of action and granted summary judgment. *Id.*

Therefore, although the Supreme Court technically awarded summary judgment in view of the nonmovant's silence, the holding is inapplicable to the case at hand because the government as a petitioning creditor bears the ultimate burden of persuasion, *see In re Salem Corp.,* 29 B.R. 424, 428 (D.S.D.Ohio 1983); *In re SBA Factors of Miami,* 13 B.R. 99, 100 (Bankr.S.D.Fla.1981), and must establish that no genuine issue for trial exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. at 157, 90 S.Ct. at 1608.

6. The parties are not in dispute as to whether the amount of the government's claim, in and of itself, is sufficient to satisfy the statutory minimum prescribed by § 303(b)(1).

for the purposes of discharging fine as a debt; generally civil fines are dischargeable, while criminal fines are not dischargeable); *Securities and Exch. Comm'n. v. Diversified Growth Corp.*, 595 F.Supp. 1159, 1171 (D.D.C.1984) (distinguishing between criminal and civil contempt fines for the purpose of 28 U.S.C. § 2007(a), disallowing imprisonment for a debt); *In re Corbly*, 61 B.R. 851, 856 (Bankr.S.D.1986) (distinguishing civil and criminal fines to determine dischargeability); *In re Gedeon*, 31 B.R. 942, 945 (Bankr.D.Colo.1983) (same).

The 16–million dollar contempt fine, whether characterized as civil or criminal, is a "claim" for the purposes of a petition in involuntary bankruptcy and, accordingly, there is no genuine issue as to a material fact on this issue.

### 2. Is the United States' claim contingent as to liability?

▉ Although § 101 defines "claim" as generally including those debts which are "contingent", a creditor's claim in an involuntary bankruptcy proceeding cannot be "contingent". *See* § 303(b)(1). It is well settled that a contingent claim is one which is dependent on some future event for liability to attach. *See In re Dill*, 731 F.2d 629, 631 (9th Cir.1984); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980); *Matter of Cinnamon Lake Corp.*, 48 B.R. 70, 72 (Bankr.M.D.Fla.1985). In the instant case, liability attached on the date the contempt citations were issued by Judge Mazzone, thus no genuine issue exists as to this element of the government's case.

### 3. Is the United States' claim subject to a bona fide dispute?

▉ The alleged debtors in the case at bar maintain that the government's fines are genuinely disputed, thereby creating a fact for trial.[7] In *In re Drexler*, the Bankruptcy Court for the Southern District of New York analyzed at length the cases

discussing the definition of a bona fide dispute. 56 B.R. 960 (Bankr.S.D.N.Y.1986). In *Drexler*, the court noted that there is no definition of "bona fide dispute" in the Code, therefore courts have struggled to compose a fair definition. *Id.* at 966. Courts generally agree Congress never intended a creditor to be able to bring a claim under § 303 if that claim was subject to a serious dispute. *In re Reid*, 773 F.2d 945, 947 (7th Cir.1985) (citing *In re B.D. International Discount Corp.*, 701 F.2d 1071, 1076 (2d. Cir.), *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983). The assertion of creative defenses by a debtor, however, is not sufficient to establish a bona fide dispute. *In re CLE Corp.*, 59 B.R. 579, 584 (Bankr.N.D.Ga.1986).

Prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), one court held "[I]n order to qualify a claim as a basis for seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment.... It is sufficient to establish that there are good grounds for the claim and no defense asserted in substantial form." *In re B.D. International Discount Corp.*, 701 F.2d 1071, 1077 (2d Cir.), *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983).

Post–BAFJA courts have used different approaches since the amendments failed to include a more specific definition. *See In re Ross*, 63 B.R. 951, 158 (Bankr.S.D.N.Y. 1986). In *In re Johnston Hawks, Ltd.*, the court held, "a bona fide dispute is a conflict in which an assertion of a claim or right made in good faith and without fraud or deceit on the other side." 49 B.R. 823, 830 (Bankr.D. Hawaii 1985). The *Johnston Hawks* court added that a court should consider on balance whether the interests of the creditor outweigh the debtor's. *Id.* at 831. The court in *In re Stroop* held that:

> If the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be ren-

---

7. Of the fines totalling $16,242,000.00, 98% of the amount is under appeal in the First Circuit Court of Appeals.

dered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute.

51 B.R. 210, 212 (D.Colo.1985).

In *In re Lough,* the Bankruptcy Court for the Eastern District of Michigan rejected *Stroop* and *Johnston Hawks* and held that the proper definition of bona fide dispute is "whenever there is any legitimate basis for the debtor not paying the debt, whether the basis is factual or legal." 57 B.R. 993, 997 (Bankr.E.D.Mich.1986); *see also Matter of Busick,* 831 F.2d 745, 749–50 (7th Cir.1987) (following *Lough* ); *In re B.B.S.I. Ltd.,* 81 B.R. 227, 16 B.C.D. 1290, 1292–93 (Bankr.E.D.N.Y.1988) (same); *In re Garland Coal & Mining Co.,* 67 B.R. 514, 521 (Bankr.W.D.Ark.1986) (same).

Clearly, the alleged debtors in the instant case "challenge" the legal basis for the contempt fines imposed, but however persuasive the alleged debtors' argument might appear it is inapplicable to the situation at hand. The aforementioned cases discuss claims that have not been reduced to a judgment. The instant claims have. Although the contempt fines are on appeal, such appeals do not threaten the finality of the judgment rendered. *In re Drexler,* 56 B.R. 960, 967 (Bankr.S.D.N.Y.1986). In *Drexler,* the court observed, "once entered, an unstayed final judgment may be enforced in accordance with its terms and applicable law or rules, even though an appeal is pending." *Id.* To hold that the pendency of a debtor's appeal creates a bona fide dispute within the meaning of § 303 would be "contrary to the basic principles respecting the enforceability of and unstayed final judgments.... A judgment by which a court ends a cause does not hang in limbo pending appeal." *Id.* at 967–68 (*quoting* in part *United States v. Ver-*

*linsky,* 459 F.2d 1085, 1089 (9th Cir.1972); *see also In re Galaxy Boat Mfg. Co. Inc.,* 72 B.R. 200, 202 (Bankr.S.C.1986) (although debtor has appealed creditor's claim, such a claim is not the subject of a bona fide dispute as contemplated by § 303(h)(1).

Even applying *Lough,* the ultimate test is whether there is a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to the facts. 57 B.R. 993, 997 (Bankr.E.D.Mich.1986). Clearly, the claim of the United States is not subject to a bona fide dispute under this test. The facts are undisputed, liability attached upon judgment and the alleged debtors have failed to persuade this Court that their contentions regarding the application of the law to those facts are indeed meritorious. There is no genuine issue as to a material fact with respect to this issue.[8]

■ Although the government has established that it qualifies as a creditor under § 303, the Court also must determine whether the government may in fact bring a petition in involuntary bankruptcy against the alleged debtors. Under § 303(a), a creditor may file an involuntary bankruptcy petition only against a "moneyed, business, or commercial corporation." *See* 11 U.S.C. § 303(a).

With respect to whether Fusion and Caucus are appropriate debtors, the government first argues that this issue is not jurisdictional but an affirmative defense and, acccordingly, the alleged debtors must plead and prove their opposition.[9] *See In re Johnson,* 13 B.R. 342, 346–47 (Bankr.D. Minn.1981). The alleged debtors maintain that on a motion for summary judgment it is the plaintiff's burden to show no genuine issue as to even this material fact. In

---

**8.** Judge Mazzone of the United States District Court for the District of Massachusetts recently denied a 60(b) motion to re-open the $5–million judgment obtained against the National Democratic Policy Committee ("NDPC") on all grounds. *In re Grand Jury Proceedings* (National Democratic Policy Committee), M.B.D. No. 85–206, slip op., (D.Mass. March 7, 1988) *see* Fed.R.Civ.P. 60(b). The alleged debtors previously had identified the NDPC action as a proceeding parallel to the case at bar and had requested a stay of the action pending in this Court until the outcome of the NDPC motion. The judgment against NDPC may now lend additional support to the government's position that its claim is not subject to a bona fide dispute.

**9.** Campaigner Publications, Inc. has admitted in paragraph 4 of its answer to the involuntary petition that it is a person against whom an involuntary petition may be commenced.

actuality both are right, the alleged debtors must plead and prove the issue of whether they are eleemosynary organizations, but the government must on a motion for summary judgment establish that there is no genuine dispute even as to this issue. Thus, to defeat the government, the alleged debtors at the summary judgment stage need only show the court that a genuine issue as to a material fact exists. *See Celotex,* 106 S.Ct. at 2553 (where non-moving party for summary judgment will bear burden of proof at trial on a dispositive issue, Rule 56 requires the non-moving party to show that there is a genuine issue for trial to defeat the motion); *see also* 6 Moore's Federal Practice, ¶ 56.23 (2d ed. 1987) at 56–1393 (party moving for summary judgment has the burden of establishing the lack of any triable issue of material fact even as to issues upon which the opposing party has the burden of proof at trial).[10]

With respect to the substantive aspects of establishing that the alleged debtors are moneyed corporations, the parties also disagree as to which legal standard applies. The government notes that the Court must follow the Fourth Circuit's decision in *In re Allen University* and examine the alleged debtors' business activities in addition to the corporations' charters to determine whether the alleged debtors' commercial endeavors are the primary or ancillary activities of the corporations. 497 F.2d 346, 348 (4th Cir.1974).

The debtors cite *In re United Kitchen Associates* for the proposition that there are two approaches to analyzing this issue: the state classification rule and the bankruptcy rule. 33 B.R. 214, 216 (Bankr.W.D. La.1983). The first relies solely on the status that the corporation has under state law, and the second suggests courts examine both the corporation's charter and its activities to determine whether the alleged

debtors are ineligible to be debtors in an involuntary case. *Id.*

Although the Fourth Circuit did take notice of the corporation's charter in *Allen,* the court clearly evaluated the corporation's overall activities. Thus, without characterizing the *Allen* court's decision as following the bankruptcy rule per se, it is clear that we must base our decision on more than the corporation's charter and status under state law.

In the case at bar, the government undergirds its position that the alleged debtors are moneyed corporations with a document describing the alleged debtors' business activities reflecting a large cash flow. Government Exhibit No. 4. This document is accompanied by the affidavit of a Virginia State Police Officer stating that the document was seized from the debtors' business locations. Government Exhibit No. 38. The government also asserts that Fusion's Exhibit 7 admits that the publication of a magazine is Fusion's primary activity and points to the government's Exhibit 4 as showing circulation of 100,000.

The alleged debtors point to their charters of incorporation, Exhibits Nos. 1 and 2, which refer to the corporations as not-for-profit corporations, as well as to Exhibits Nos. 3–11, affidavits of persons attesting to the bona fide educational purpose of their corporations.

After careful review of the parties' exhibits we are unable to conclude whether the alleged debtors are moneyed corporations as a matter of law. The government's Exhibit No. 4, while accompanied by an affidavit certifying that it was seized at the Caucus headquarters, is not conclusive. Certainly, many non-profit organizations have large cash flows, and the act of publishing a magazine in and of itself cannot be deemed a money making venture as a matter of law. Moreover, as the alleged debtors correctly point out, within the

---

**10.** Contrary to the government's position, some courts have held that where the issue is controverted, the petitioning creditor bears the burden of proving that he may obtain relief against the alleged debtor under § 303. *Jenkins v. Petitioning Creditor—Ray E. Friedman,* 664 F.2d 184, 186 (8th Cir.1981); *In re Hinrichs,* 314 F.2d 384,

385 (7th Cir.1963); *In re White,* 238 F.Supp. 454, 455 (D.Colo.1965). Regardless of which view this Court supports, the government must establish that there is no genuine issue as to the alleged debtors' status on its motion for summary judgment.

government's Exhibit No. 4 is a specific reference to Caucus as a "not for profit" corporation.

On the other hand, the alleged debtors' charter and status under New York law while not dispositive are probative. In addition, the alleged debtors' Exhibits Nos. 3–11 raise a genuine issue as to whether the corporations' activities are primarily educational in nature. *See Allen,* 497 F.2d at 348 (while university conducted ancillary activities which were commercial in nature, the primary emphasis of the university was educational). We note also the absence of any evidence pertaining to the financial structure of the corporations. *See id.* (examining whether there was capital stock in the corporation, or a return of capital to investors). Accordingly, we conclude that there is a genuine issue as to a material fact as to whether the alleged debtors are moneyed, business, or commercial corporations.

In view of the government's inability at this time to establish that the alleged debtors are moneyed, business, or commercial corporations, a decision to grant the government's summary judgment motion would be inappropriate. Even assuming, however, that the government had sustained its burden in establishing that the alleged debtors are profit-making entities, the government also has failed to establish the primary basis of an involuntary bankruptcy case. Under section 303(h)(1) of the Code, a court may order relief against a debtor in an involuntary case only if the creditor establishes that the "debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute[.]" 11 U.S.C. § 303(h)(1).

The parties agree that on the issue of whether the alleged debtors are paying their debts as they become due, that the burden of proof is on the government. *See In re CLE Corp.,* 59 B.R. 579, 585 (Bankr. N.D.Ga.1986); *In re Salem Corp.,* 29 B.R. 424, 430 (Bankr.D. Ohio 1983); *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 100 (Bankr.S.D.Fla.1981). At what point this burden is met, however, is difficult to as-sess because the standards that courts have articulated vary and have been described as being flexible to make it easier to commence involuntary proceedings against debtors. *See Matter of Win–Sum Sports, Inc.,* 14 B.R. 389, 392–93 (Bankr.D. Conn.1981) (standard is flexible); *In re CLE Corp.,* 59 B.R. 579, 585 (Bankr.N.D. Ga.1986) (congressional intent evident in § 303(h) to grant more flexibility).

In view of Congress' reluctance to incorporate a definitive guideline in § 303(b), courts have developed different standards. "Generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments that are significant in amount in size to the debtor's operation. Where the debtor has few creditors, the number which will be significant will be fewer than when the debtor has a large number of creditors. Also the amount of debts being paid is important. If the amounts missed are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper." *In re All Media Properties, Inc.,* 5 B.R. 126, 143 (Bankr.S. D.Tex.1980); *see Matter of Win–Sum Sports, Inc.,* 14 B.R. 389, 392 (Bankr.D. Conn.1981) (following *All Media*). "Determining that a debtor is generally not paying his debts requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts." *In re Dill,* 731 F.2d 629, 632 (9th Cir.1984). "A court must compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the nonpayment, and the nature of the debtor's conduct of its financial affairs." *In re Leek Corp.,* 52 B.R. 311, 314 (Bankr. M.D.Fla.1985). "A starting point in the inquiry is to employ what is termed the mechanical test which is composed of five factors: the timeliness of payments on past due obligations; the amount of debts long overdue; the length of time during which the debtor has been unable to meet large debts; any reduction in the debtor's assets, and the debtor's financial situation." *In re Dakota Lay'd Eggs,* 57 B.R. 648, 657 (Bankr.D.N.D.1980).

■ The "generally not paying" test must be applied as of the date of filing of the involuntary petition. *In re Molen Drilling Co., Inc.,* 68 B.R. 840, 846 (Bankr. D.Mont.1987), and employed with regard to any unique circumstances attendant to a particular proceeding. *In re Dakota Lay'd Eggs,* 57 B.R. 648, 657 (Bankr.D.N.D.1986); *see In re Galaxy Boat Mfg. Co., Inc.,* 72 B.R. 200, 203 (Bankr.D.S.C.1986) (citing *In re Dakota*).

■ Regardless of which standard this Court chose to follow, in order to sustain a petition for involuntary bankruptcy, courts generally require the creditor to proffer evidence relating to the overall financial structure of the alleged debtor. Since the alleged debtors' cases have been consolidated for trial but not for judgment purposes, the government must proffer such evidence with respect to each of the three alleged debtors, and establish that each is not paying its debts when due. The government has fallen short of providing the requisite quantity and quality of information needed to make such determinations as a matter of law.[11]

In *In re Einhorn,* the Bankruptcy Court for the Eastern District of New York addressed essentially the same fact situation as in the instant case. 29 B.R. 966 (Bankr. E.D.N.Y.1983). The defendant/debtor pled guilty to the charge of grand larceny in the second degree in the Supreme Court of New York. *Id.* at 967. Although the amount alleged stolen was stated as $1,500.00 worth of air traffic tickets, the creditors contended the amount stolen actually approximated $1,500,000.00. *Id.*

Prior to the criminal proceeding, the Air Traffic Conference of America requested a grand jury investigation of the debtor. *Id.* The investigation resulted in an indictment and the debtor negotiated a plea bargaining agreement which included partial restitution to his creditors. *Id.* To collect the remaining money due, the creditors instituted a civil suit aainst the debtor who invoked the Fifth Amendment privilege against self-incrimination throughout the proceeding. *Id.* at 968. The creditors then filed an involuntary petition in bankruptcy. *Id.* The creditors submitted as evidence the guilty plea, and the debtor's admission of having stolen $1,500.00 worth of airline tickets in support of a motion for summary judgment. *Id.* In view of the debtor's invocation of the Fifth Amendment, the creditors were unable to produce evidence pertaining to the overall financial status of the defendant. *Id.* Acknowledging that material issues of fact remained to be tried, the court denied summary judgment. *Id.* at 970.

On the issue of whether to draw adverse inferences from the defendant's invocation of the Fifth Amendment privilege, the court observed:

> The creditors cannot presume that the court will grant summary judgment based solely on the adverse inference arising upon [the debtor's] invocation of the Fifth Amendment privilege. To do so would be an abrogation of [the debtor's] right of protection of the Fifth Amendment.

*Id.* at 970.

The government attempts to distinguish *In re Einhorn* from the case at bar by noting that the "United States has presented much evidence showing a broad practice of nonpayment of debts." While the government has certainly introduced a larger number of exhibits, it has failed here to carry the burden of establishing the absence of a genuine issue as to all the material facts of the government's case.[12]

---

**11.** Upon careful consideration of all the evidence before this Court, we conclude that the government's forty-two (42) exhibits, whether considered individually or as a whole, do not establish that the alleged debtors are generally not paying their debts as a matter of law.

**12.** In view of the Court's determination that the government has not established all aspects of the government's case as a matter of law, the Court need not consider the alleged debtors' affirmative defenses relating to the number of petitioning creditors, the alleged bad faith of the government, and whether the petition for an involuntary bankruptcy against the alleged debtors constitutes "prior restraint" at this time.

An appropriate order denying the government's motion for summary judgment will be entered in each of the above-captioned cases.