**In re B.B.S.I., LTD., doing business as Israel Shelanu, Alleged debtor.**

**Bankruptcy No. 187–72605–260.**

United States Bankruptcy Court, E.D. New York.

Jan. 19, 1988.

Kramer, Levin, Nessen, Kamin & Frankel by Arthur H. Aufses, Menahem Z. Gurman, New York City, for B.B.S.I.

Oliner & Oliner, New York City by Jacob Oliner, for petitioning creditors.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

This case involves the procedural aspects of contesting disputed claims alleged in support of an Involuntary Petition for relief under Chapter 7. The Court finds the claims of the petitioning creditors are subject to bona fide disputes, and therefore dismisses the Petition.

## FACTS

An Involuntary Petition for relief under Chapter 7 of the Bankruptcy Code was filed on December 4, 1987 by three petitioning creditors against the alleged debtor, B.B.S.I., Ltd. ("BBSI" or "debtor").[1] The debtor moved to dismiss the Petition on the grounds it was jurisdictionally defective because the creditors' claims are subject to bona fide disputes.[2]

The debtor is the publisher of a weekly Hebrew-language newspaper, *Israel Shelanu* (*"Shelanu"*), printed in Brooklyn, New York. In its application in support of the motion to dismiss, it is stated that *Shelanu* has been published on a weekly basis for eight years, numbering over sixty pages per issue, that it has tens of thousands of subscribers throughout North America and Israel, along with hundreds of advertisers, that it is solvent and that it owns its equipment free and clear.

At the hearing on the motion held before this Court on December 30, 1987, the attorney for the petitioning creditors appeared with only one creditor, Dr. Yossi Gamzu, who was the only creditor to file an affidavit in opposition to the debtor's motion to

---

1. The three petitioning creditors work or are associated with *Israel News,* a competitor newspaper of the debtor's newspaper, *Shelanu.*

2. BBSI's motion to dismiss also seeks costs, attorneys' fees, proximate damages and punitive damages, pursuant to section 303(i).

dismiss. Annexed to the affidavit is a letter from *Shelanu* addressed to Gamzu, which recites that Gamzu was employed as a *Shelanu* editor at an annual salary of $36,000. Gamzu also submitted a second, personal letter from an editor of the debtor, who recommended that Gamzu pursue working as an editor for *Shelanu,* provided that Gamzu meet and get along with the debtor's principal and become a resident of the United States. Presumably the letters were submitted as evidence of a constructive employment contract between the debtor and Gamzu. Neither the debtor nor Gamzu submitted an actual employment contract. Gamzu alleges that he worked for the debtor newspaper for 4½ months and that he is owed $11,250.

Conversely, BBSI alleges that Gamzu was hired as an unpaid trainee, since Gamzu's immigration status as an Israeli citizen would not allow otherwise. The debtor also claims the letter from *Shelanu* reciting Gamzu's employment was only to facilitate Gamzu receiving a "Green Card," to enable him to legally live and work in the United States. The letter was not meant as an employment contract. BBSI further claims that Gamzu worked only four days, then was dismissed as being incompatible with the debtor's goals.

Gamzu's claim is subject to a bona fide dispute. It is uncertain what length of time Gamzu worked for BBSI. It is uncertain if BBSI was to pay Gamzu or if BBSI legally could pay him, given Gamzu's immigration status. What is certain, based upon the two letters, is Gamzu did not have an employment contract with the debtor upon which he can make claim for wages owed to him.

Insofar as the remaining petitioning creditors are concerned, Meyer Bendet claims in the Involuntary Petition to be a creditor in the sum of $15,000 for "work, labor and services," without providing more detail. BBSI's motion alleges that Bendet was formerly employed by it as a typesetter about eight years ago and was paid in full. BBSI further argues that even if monies are owing from an eight year old obligation, the claim would be barred by the statute of limitations. Bendet did not offer an affidavit or documentation to counter the debtor's written allegations.

Bendet's claim is subject to a bona fide dispute. Factually it is disputed whether Bendet was paid. Legally it is disputed that if there are monies owing, the claim is barred by the statute of limitations.

Joseph Billig also alleges in the Involuntary Petition he is a creditor "for money loaned to the debtor in the approximate amount of $7,000," without providing more detail. BBSI's motion does not dispute the $7,000 but asserts the loan was made to and for an officer of the debtor rather than to the debtor. Billig also did not offer an affidavit or loan documentation to counter the debtor's written allegations.

Billig's claim is likewise subject to a bona fide dispute. It is uncertain whether the loan was made to the debtor or to its principal, in which case the debtor would not be liable.

After the motion was made and after hearing arguments on it, the Court received an application of Boaz Gabbai to join in the Involuntary Petition as an additional creditor in the sum of $100,000.[3] Gabbai's application states he accepted employment as a graphic designer with the debtor for less than $5 an hour, rather than his customary charge of $25 an hour, with the unwritten promise that the debtor would sponsor his "Green Card" application. Gabbai worked from September 1980 until September 1983. At an unknown time, Gabbai claims that the debtor's principal, Schmuel Shmueli, refused to sponsor Gabbai's application unless Gabbai tendered $25,000, which Gabbai refused to do. Gabbai's $100,000 claim is supposedly the difference he would have received had he worked for the debtor making $25 an hour without a promise of sponsorship. BBSI disputes Gabbai's claim in all respects.

**3.** Section 303(c) permits the application of additional creditors until "the case is dismissed or relief is ordered."

Gabbai's claim is subject to a bona fide dispute. It is factually disputed whether such a sponsorship agreement existed. Even if there was such an agreement, it is doubtful such a provision is legally recognized or enforceable. Also it is unknown if the debtor would have paid Gabbai $25 an hour for a graphic designer. Last, assuming Gabbai's allegation to have merit, it is uncertain whether the claim is proper against the debtor or against its principal.

## DISCUSSION

Section 303 governs the commencement of involuntary cases under title 11. Section 303(b) specifies who may file an involuntary petition. It states in pertinent part as follows:

> (b) An involuntary case against a person commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities each of which is either a holder of a claim against such a person that is not contingent as to liability or the subject of a bona fide dispute....

Section 303(h) provides the alleged debtor with two alternative responses to an involuntary petition. The debtor may decide not to contest the involuntary petition, in which case "the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." Alternatively, the debtor may contest the involuntary petition by "timely controvert[ing]" it.

BBSI timely controverted the Involuntary Petition. Bankruptcy Rule 1011(b) states: "Defenses and objections to the [involuntary] proceeding shall be presented in the manner prescribed by Rule 12 FR Civ P." Rule 12(b)(1) permits a party to controvert the Court's jurisdiction over the subject matter by responsible pleading or by motion. Thus, the debtor's motion was proper to controvert the Petition.

Additionally, Bankruptcy Rule 1011(c) provides that for a motion to be timely, it must be filed and served in accordance with Rule 12(a). Rule 12(a) permits an entity twenty days to serve and file a motion.

The three petitioning creditors filed the Involuntary Petition on December 4, 1987; eighteen days later the debtor filed its motion to dismiss the case and served the same on the creditors. Thus, the debtor timely controverted the Involuntary Petition pursuant to section 303(h).

Since the Involuntary Petition was timely controverted, the second sentence of section 303(h) must be considered. It provides:

> [A]fter trial, the court shall order relief against the debtor in an involuntary case under the chapter which the petition was filed, only if—
>
> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute....

(Emphasis added). The debtor argues that this Court can properly determine without trial whether the claims are subject to bona fide disputes from the Involuntary Petition, the application in support of the motion to dismiss, the affidavit in opposition to the motion, the application of Gabbai to join the Petition, the arguments made at the hearing and the many letters received from both counsel in support of and in opposition to the debtor's motion to dismiss. Conversely, the petitioning creditors argue that discovery and trial are necessary for the Court to determine whether the claims are subject to bona fide disputes.

█ Although section 303(h) procedurally suggests a trial to determine whether an involuntary petition is properly filed, such a requirement is consumed by exceptions and practicalities. As set forth *supra,* Bankruptcy Rule 1011(b) states: "Defenses and objections to the [involuntary] petition shall be presented in the manner prescribed by rule 12 FR Civ P...." Rule 12(b)(1) provides that a defense that may be made is the court's lack of jurisdiction over the subject matter. The debtor argues that inasmuch as the claims are subject to bona fide disputes, the Petition is jurisdictionally defective. Since Rule 12(d) permits the jurisdictional defense of Rule 12(b)(1) to "be heard and determined *before trial* on application of any party," (emphasis add-

ed), a trial is not needed to determine whether the Involuntary Petition was properly filed. *Cf. In re Tikijian,* 76 B.R. 304, 312 (Bkrtcy.S.D.N.Y.1987) (because Bankruptcy Rule 1018 permits the application of summary judgment to a contested involuntary petition, a trial is unnecessary); *In re Onyz Telecommunications, Ltd.,* 60 B.R. 492, 496 (Bkrtcy.S.D.N.Y.1985) ("[i]t must be remembered that a court is free to determine factual disputes and reach the merits of a subject matter jurisdictional issue without a formal trial"); 2 Collier on Bankruptcy Para. 308.08 [11][b] at 303–33 (15th ed. 1987) ("[p]resumably, there must be a 'bona fide dispute' which a bankruptcy judge must find either on a motion to dismiss or at trial"). If the court documents and arguments clearly establish that a claim is or is not subject to a bona fide dispute, a trial is unnecessary to determine whether an involuntary petition is jurisdictionally defective.

The practicalities also dictate that a trial need not always occur to determine whether involuntary petitions are properly filed. For example, if there are less than three petitioning creditors where three or more are required or where the petitioning creditors' claims do not aggregate to $5,000, it is impractical to have a trial. Not having a trial aids the Bankruptcy Court in quickly resolving whether an involuntary petition is properly filed, which speed is mandated by Bankruptcy Rule 1013(a): "The court shall determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief...." Accordingly, there is no need for a trial in this case to determine whether the petitioning creditors' claims are subject to bona fide disputes.

"There is no definition of 'bona fide dispute' in the Code." *In re Ross,* 63 B.R. 951, 958 (Bkrtcy.S.D.N.Y.1986). The Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") added the critical, undefined words to section 303(b)(1) and (h)(1). The late Judge Friendly of the Second Circuit Court of Appeals, prior to BAFJA, in *B.D. Int'l Discount Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Discount Corp.),* 701 F.2d 1071 (2d Cir.

1983), *cert. denied,* 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983), observed: "Still we have difficulty in believing that Congress intended that a debtor should be found to be generally not paying its debts as they became due under § 303(h)(1) ... when that claim is subject to serious dispute." 701 F.2d at 1076. The Court also noted an involuntary proceeding will not be dismissed if "[i]t is sufficient to establish ... that there are good grounds for the claim and that no defenses have been assserted in substantiable form." *Id.* at 1077.

Post–BAFJA section 303(h) case law confirms Judge Friendly's observation. *In re Lough,* 57 B.R. 993 (Bkrtcy.E.D.Mich.1986), concluded "if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed." *Id.* at 997. *Lough* further observed:

> The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy. Accordingly, if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed facts, then the petition must be dismissed.

*Id.* at 997; *see In re Busick,* 831 F.2d 745, 750 (7th Cir.1987) (quoting *Lough,* 57 B.R. at 997); 130 Cong.Rec. S7618 (daily ed. June 10, 1984) (statement of Senator Baucus) (sponsor of BAFJA's "bona fide dispute" addition to section 303), *reprinted in In re Henry,* 52 B.R. 8, 9–10 (Bkrtcy.S.D. Ohio 1985).

Additionally, *In re Ross,* 63 B.R. 951 (Bkrtcy.S.D.N.Y.1986), found while it needs to be determined if a creditor's claim in an involuntary case is the subject of a bona fide dispute, in the "final analysis before entering an order for relief, the court must test its result by balancing the interests of the creditors against those of the debtor

... if the debtor disputes the petitioner's claims." *Id.* at 961–62.

■ The Court finds the claims of the petitioning creditors are subject to bona fide disputes, as discussed *supra*. The Court also finds it is in the best interests to dismiss this Petition in light of BBSI's financially healthy status and history.

Accordingly, BBSI's motion is granted, dismissing the Involuntary Petition filed against it. Submit Order to that effect.

The Court will hold a hearing on the 17th day of February, 1988 at 2:30 P.M. in Courtroom 1 of this Court to determine if costs, attorneys' fees, proximate and punitive damages should be awarded to BBSI, as BBSI seeks in its motion to dismiss, pursuant to section 303(i) of the Bankruptcy Code.