In re Gene A. **REBEOR,** a partner of Royal Limousine, as an office of Radisson Sun Studio, Inc., Sunsations, Ltd. & Fulton Typewriter Store, Inc., Debtor.

Bankruptcy No. 88–00810.

United States Bankruptcy Court, N.D. New York.

Oct. 31, 1988.

---

Pelland & Shockey, Syracuse, N.Y., for debtor; David W. Pelland, of counsel.

Menter, Rudin & Trivepiece, P.C., Syracuse, N.Y., for petitioning creditors; Jeffrey A. Dove, of counsel.

Hancock & Estabrook, Syracuse, N.Y., for Marine Midland Bank; Stephen A. Donato, of counsel.

Lee E. Woodard, Syracuse, N.Y., trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

These matters come before the Court on the motion of Gene A. Rebeor ("Debtor"), pursuant to Bankruptcy Rule ("Bankr.R.") 9024, to vacate the Order of Relief entered against him July 6, 1988 on an involuntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code") and, for authority to sell real property located at 118 South Main Street, Central Square, New York, free and clear of liens and encumbrances which would then attach to the proceeds. A hearing was conducted on August 2, 1988 in Syracuse, New York, after which the Court reserved decision.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the subject matter and the parties by virtue of 28 U.S.C.A. §§ 1334 and 157 (West Supp. 1988). This is a core proceeding, 28 U.S.C.A. § 157(b)(1), (b)(2)(A), (N) and (0), rendered in accordance with Bankr.R. 1010, 1011, 1013, 1018, 2002, 6004, 7052 and 9014.

### FACTS

On May 24, 1988, the Neal–O'Brien Corp., Gypsum Wholesalers, Inc. and Michael Burns, d/b/a The Houseworks, filed a Chapter 7 involuntary petition against the Debtor.

On May 25, 1988, the Court issued the summons. On June 1, 1988, a copy of the summons and involuntary petition was mailed to the Debtor by regular and certified mail, as indicated by the affidavit of mailing filed June 2, 1988.

The Court entered the Order for Relief on July 6, 1988 and mailed a notice to the Debtor directing him by July 21, 1988 to file the applicable lists, schedules and statements in compliance with Bankr.R. 1007(a)(2), (b) and (c).

On the same day, the Debtor filed an answer to the involuntary petition seeking its dismissal, damages and attorney's fees.

An Order appointing a trustee was signed by the Court on July 22, 1988.

The Debtor filed the instant motion on July 26, 1988 and oral argument was heard on August 2, 1988, where appearances were made by David W. Pelland, Esq. ("Pelland") on behalf of the Debtor, Jeffrey A. Dove, Esq. ("Dove") for the petitioning creditors, Stephen A. Donato, Esq. for Marine Midland Bank, N.A. and Lee Woodard, Esq., the appointed Chapter 7 trustee.

The petitioning creditors filed an affirmation in opposition on August 15, 1988. On August 24, 1988 their counsel filed a letter, dated June 22, 1988, from Harold P. Goldberg, Esq. ("Goldberg") addressed to the United States Bankruptcy Court and copied to Dove, confirming a ten-day extension of time within which the Debtor could answer the involuntary petition.

To date, the required schedules and statement have not been filed with the Bankruptcy Clerk.

### THE PARTIES CONTENTIONS

The petitioning creditors allege "holding claims against the Debtor, not contingent as to liability, not subject to bona fide dispute, which amount in the aggregate, in excess of the value of any lien held by them on the Debtor's property securing such claims, to at least $5000.00." *Involuntary Petition Under Chapter 7 Of The Bankruptcy Code*, at para. 1 (May 23, 1988). They also assert Rebeor's Title 11

eligibility, his residency in the district for 180 days preceding the filing of the petition and his inability to pay his debts when they become due. *Id.* at paras. 2–4.

In his general denial answer, Rebeor raises what he characterizes as a first affirmative defense and counterclaim: that the law firm of the petitioning creditors also represents William Miller, who is, with the Debtor, the only other officer and shareholder of Fulton Typewriter Store, Inc. and that a disputed claim exists between the two with regard to monies arising from the company's operation. *Answer To Involuntary Petition*, paras. 4–6 (July 6, 1988). Additionally, Rebeor charges that the involuntary petition was filed in bad faith. *Id.* at para. 7.

In support of the instant motion, Pelland stated that the Debtor contacted him on July 5, 1988 subsequent to requesting several other attorneys to represent him in defense of the involuntary case and after James P. Selbach, Esq. ("Selbach"), who represented him in his prior Chapter 13 proceeding, which was voluntarily dismissed, chose to terminate their relationship. *Affidavit of David W. Pelland, Esq.*, paras. 3–4 (July 22, 1988). He affirmed that on the morning of July 6, 1988 he spoke to Dove, who informed him that the time to answer expired that day and that no further extensions would be granted. *Id.* at para. 5. Based upon this telephone conversation, Pelland prepared the answer, including the counterclaim, and delivered it that day, with his client's assistance, to the Bankruptcy Clerk's office in Utica and to Dove's office. *Id.* at paras. 6–7.

Pelland avers that the Order for Relief was entered by the Court "under the mistaken impression that no Answer had been received and filed in a timely fashion to the Summons and Complaint issued by the Court and the Petitioning Creditors." *Id.* at para. 8. Making reference to the answer, he also claims the Debtor to hold a valid defense to the entry of the Order for Relief, which he characterizes as a "clerical error" warranting correction. *Id.* at para. 9.

The Debtor also requests a court order authorizing him to proceed with the sale of a parcel of real property in Central Square, New York, including an eight-unit building. *Id.* at para. 10. Pelland asserts that the Debtor had obtained a contract to purchase and was moving towards its closing prior to the entry of the Order for Relief on July 6, 1988 but was now barred from progressing further pending the appointment of a trustee and authorization to proceed. *Id.* at para. 12. The Debtor asks that the sale be allowed to continue to prevent his equity in the property from being "lost or compromised" if the Court does not vacate the Order for Relief. *Id.* at para. 13.

The Debtor also requests authority to pay the previously agreed to real estate commission and attorney's fees, presumably pursuant to the alleged purchase agreement. *Id.* at para. 14.

At oral argument, Pelland stated that, based on his conversation with Dove on July 6, 1988 he believed the answer to have been timely filed and the Order for Relief entered clerically before it was actually due. He explained that he saw the Debtor on the morning of July 6 at Selbach's request after being told that the Debtor had been turned down by three or four different attorneys and both had asked him to take on the involuntary case and submit an answer. Pelland then called Dove to inquire about the submission of the answer and was told that it was due that day and no further extensions were likely to be forthcoming.

Pelland stated that he had no idea of the scope of the extensions, had indicated to Dove that he would not ask for any more and that the answer would be filed that day. Thereafter, Pelland and the Debtor prepared the Answer, and it was delivered to the Clerk's office in Utica and to Dove's office. Pelland received notification of the entry of the Order for Relief within the next two days.

Initially, Dove objects to the instant motion not being timely served in accordance with Bankr.R. 9006, which excludes weekends for the computation of time periods under eleven days. Dove goes on to re-

count that Goldberg had obtained a ten-day extension to file the answer and then confirmed it with a court clerk "who actually grants it". He also stated granting one additional day beyond that first extension so that his calculations placed July 5, 1988 as the last day to file an answer, rather than July 6, 1988.

Dove recalled advising Pelland that he thought the answer was due that day [July 6] but that he wasn't sure. Notwithstanding the instant motion's defectiveness as to timeliness or the presence of a clerical mistake, Dove claimed that, on the merits, the Debtor wholly failed to allege any material defense to the petition as is required to vacate the default judgment. Furthermore, the Debtor's general denial as to the existence of debts held by the petitioning creditors contradicted his Chapter 13 schedules filed under oath on July 3, 1987, in which he stated an aggregate debt to the same creditors exceeding $8000.00.[1] Dove submits that the best case scenario is that the Debtor filed his answer solely to delay the case.

Dove noted that the only extension of time communicated by Debtor's counsel to the Clerk's office, which he believed was necessary to render the extension effective, was by Goldberg relating to the original ten-day extension of time. He stated that, in his opinion, because the additional one-day extension he had consented to was apparently not conveyed to the Clerk's office, it was not effective.

Dove explained his belief in the common federal practice of the docketing of extensions by the Clerk's office to establish some documentary evidence. He could not recall whether the authority for such a practice was contained in a local or federal rule. Dove asserted that when dealing with a time limit triggering the Clerk's action, such as in the case of an involuntary petition, it had always been his firm's practice to file a written stipulation or let-ter memorializing the extension or at least telephonically communicating to the Clerk that fact and the non-existence of default.

Dove further recounted telephoning the Clerk's office at the end of the original time for the Debtor to answer and inquiring if it had been filed. On the same day, he believed Goldberg had obtained the extension from himself and communicated it to the Clerk's office. Dove stated that his secretary's call to the Clerk's office at some point thereafter elicited a negative response with respect to the filing of an answer.

During the argument, Pelland stated that he never saw Goldberg's letter confirming the ten-day extension. He asserted that he would have filed an order to show cause requesting additional time to file the answer if he had known that the time had expired on July 6, 1988.

The Trustee and counsel for Marine Midland Bank supported Dove and chose not to put forth their own arguments.

Subsequent to the hearing, Dove stated that "because of the Debtor's difficulty in obtaining representation" he had consented to a second extension of one-days' duration with Michael J. Balanoff, Esq. ("Balanoff"), which would have expired July 5, 1988, not July 6, assuming the prior ten-day extension ran to July 1, 1988.[2] *Affirmation In Opposition To Debtor's Motion For Relief From Court Order*, paras. 1–2 (Aug. 12, 1988). Dove asserted that Rebeor's time to file an answer expired June 21, 1988, absent any extensions. *Id.* at para. 2.

Dove claimed that when he spoke with Pelland on July 6, 1988 he advised the latter that he was "under the impression the time to answer expired on July 6, 1988" but was unsure given the holidays and prior extensions. *Id.* Dove recounted clearly outlining to Pelland the consents to extensions with Goldberg and Balanoff.

---

1. Rebeor utilized Code § 1307(b) to dismiss this case. *See In re Rebeor,* 89 B.R. 314 (Bankr.N.D. N.Y.1988).

2. July 1, 1988 was a Friday and Monday was the Fourth of July, a national holiday. Bankr.R. 9006(a) instructs that the computation of time periods less than eleven days does not include the day the event begins to run, Saturdays or Sundays and legal holidays.

*Id.* He maintained that Pelland did not contact the Clerk or the Court "to advise of the one-day extension" and, thus, an entry of an Order upon Debtor's default was mandated under Bankr.R. 1013 and 1011. *Id.* at para. 3. This, Dove stated, was neither clerical nor judicial error, but counsel's mistake. *Id.* at para. 4. Dove contends that the default judgment cannot be set aside even if Rebeor can establish clerical error, because Rebeor has failed to establish a meritorious defense to the involuntary proceeding in his general denial answer which alleges no facts or circumstances. *Id.* at para. 5.

## DISCUSSION

The enactment of the Code in 1979 substantially altered the substantive and much of the procedural law relating to involuntary bankruptcy cases. 3 L. King, COLLIER ON BANKRUPTCY ¶ 303.01 at 303-7 (15th ed. 1988). The "entry of an order for relief" has replaced an "adjudication as a bankrupt" and Code § 303(a) instructs that an involuntary proceeding may now be brought under Chapter 11, as well as under Chapter 7. "The grounds upon which an involuntary case may be filed and an order for relief entered have been relaxed." *See id.*

This is exemplified by requiring the petitioning creditor(s) to meet one of two simple tests—the general failure to pay debts as they become due or the appointment of a custodian over all or substantially all of the debtor's property within ninety days prepetition—instead of proving the debtor committed one of six "concept" acts of bankruptcy generally within four months of the petition filing. *Compare* Section 3(a), (b), and former Bankruptcy Rule 104 of the Bankruptcy Act of 1898, *with* Code § 303(h). *See also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 323-324, *reprinted in* 1978 U.S.CODE CONG & ADMIN.NEWS 5963, 6279-6280 ("House Report"); S.Rep. No. 989, 95th Cong., 2d Sess. 34 *reprinted in* 1978 U.S.CODE CONG & ADMIN.NEWS 5787, 5820 ("Senate Report"); B. Weintraub & A. Resnick, BANKRUPTCY LAW MANUAL ¶¶ 2.08, 2.09, 2.01 at 2-3 (rev. ed. 1986).

Additionally, "[a]n involuntary petition for bankruptcy is considered with all the liberality of the usual civil complaint." *In re Longhorn 1979-II Drilling Program,* 32 B.R. 923, 926 (Bankr.W.D.Okla.1983). *Accord In re Alta Title Co.,* 55 B.R. 133, 137 (Bankr.D.Utah 1985) (court's jurisdiction over involuntary case is statutory, and is triggered by filing of petition sufficient on its face).

However, the Code's liberal approach to the commencement of an involuntary case did not alter the practical necessity for its speedy disposition, for the suspension engendered by the debtor's uncertain status adversely impacts upon the interests of all involved. *See* Bankr.R. 1018 advisory committee's note (1983). *See also In re Covey,* 650 F.2d 877, 883 (7th Cir.1981) (citing to *In re All Media Properties, Inc.,* 5 B.R. 126, 134-136 (Bankr.S.D.Texas 1980); *In re B.B.S.I., Ltd.,* 81 B.R. 227, 230 (Bankr.E.D. N.Y.1988) (discussing Bankr.R. 1013(a)); 8 COLLIER ON BANKRUPTCY, *supra,* ¶ 1013.03. Indeed, the language of Code § 303 and its accompanying rules, Bankr.R. 1010, 1011, 1013, 1018, impart a sense of urgency through the repeated use of mandatory language such as "shall" and the presence of such terms as "forthwith" and "as soon as practicable." *See also* Bankr.R. 1010 (summons and copy of petition must be served within ten days from date of issuance, pursuant to Bankr.R. 7004(f) and Rules 4(g) and (h) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P.")).

Code § 303(h) directs that "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." Legislative history indicates that "the Rules of Bankruptcy Procedure will fix time limits." *See* House Report at 323, 1978, U.S.CODE CONG at 6279; Senate Report at 34, U.S. CODE CONG at 5820. Bankr.R. 1011(b) directs all responsive pleadings or motions in involuntary cases to be filed and served within twenty days after the summons is served in accordance with Fed.R.Civ.P. 12.

BANKRUPTCY LAW MANUAL, *supra*, ¶ 2.10[2] at 2–29. Prior practice under the Act involving involuntary proceedings also relied upon Fed.R.Civ.P. 12. *See Fada Of New York, Inc. v. Organization Service Co., Inc.*, 125 F.2d 120 (2d Cir.1942); *In re McDougald*, 17 F.R.D. 2, 5 (W.D.Ark.1955); *Tatum v. Acadian Production Corp. of La.*, 35 F.Supp. 40, 50 (E.D.La.1940).

Furthermore, the only time the twenty day period to file the responsive pleading or answer can be altered is upon the timely service of a motion under subsection (b) of Fed.R.Civ.P. 12 and as allowed by Fed.R.Civ.P. 12(a). Bankr.R. 1011(c). *Cf. In re B.B.S.I., Ltd., supra*, 81 B.R. at 229. In that event, unless the court fixes a different time, the responsive pleading must be served within ten days of the court denying the motion or postponing its disposition until the trial on the merits or within ten days of the service of a more definite statement upon the court's granting of such a motion. *See id.* (referring to Fed.R.Civ.P. 12(a)); *see also* 8 COLLIER ON BANKRUPTCY, *supra*, ¶ 1011.06 at 1011–8 (citing to Bankr.R. 1011 advisory committee's notes (1983)); BANKRUPTCY LAW MANUAL, *supra*, ¶ 2.10[2] at 2–29. *See, e.g., In re Albers*, 71 B.R. 39 (Bankr.N.D.Ohio 1987) (court grants eleven-day extension under Bankr.R. 1011(b)).

Implementing Code § 303(h), Bankr.R. 1013(b) instructs that if "no pleadings or other defense to a petition is filed within the time provided by Rule 1011, the court, on the next day, or as soon thereafter as practicable, shall enter an order for relief prayed for in the petition." There is basically no reason to delay "getting on" with the Chapter 7 or Chapter 11 case if the debtor fails to file responsive pleadings for the uncertainty regarding its future and any adverse affect upon its creditors by virtue of its limbo status will then cease. *See* 8 COLLIER ON BANKRUPTCY, *supra*, ¶¶ 1013.03, 1013.05.

This result is also in line with the Ninth Circuit's procedural observation that "[w]ell pleaded allegations of the petition, including jurisdictional averments, are taken as admitted on a default judgment."

*Visioneering Construction and Development Co. v. U.S. Fidelity & Guaranty (In re Visioneering Const. and Development Co.)*, 661 F.2d 119, 124 (citing to *Thomson v. Wooster*, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885) and *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977)); *Domestic And Foreign Facilities of New Jersey, Inc. v. Domestic And Foreign Facilities, Inc. (In re Drexler Associates, Inc.)*, 57 B.R. 312, 315 (Bankr.S.D.N.Y.1986) (citing to Fed.R.Civ.P. 55(a) and (b) and Bankr.R. 7055 and 9014).

The unique nature of a contested involuntary petition, in being neither adversary proceeding nor contested motion, underscores the significance of applying these specific rules to involuntary proceedings. *See* Bankr.R. 1018 advisory committee's note (1983).

Counsel for the petitioning creditors has cited to the Court no authority in support of his curious distillation of the "common federal practice" that authorizes parties to consent to extensions of pleadings, without court approval, and then look towards the Clerk for the "granting" of that extension's "effectiveness." The granting of any pleading extension in bankruptcy court is squarely governed by the Bankruptcy Rules promulgated pursuant to 28 U.S.C.A. § 2075 (West 1988), which incorporate many of the Federal Rules of Civil Procedure, as well as the local bankruptcy rules of the Northern District of New York. *See, e.g.*, Bankr.R. 7012 ("If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, **except when a different time is prescribed by the court**.") (emphasis added).

It may be true that each particular area of the country and each court develops individual practices in response to its own needs and rhythms. However, these practices must always fall within the purview of the applicable federal and local rules to be binding on all parties-in-interest, notwithstanding the prevailing procedures in the state courts. Moreover, the Court assumes prudent behavior by an advocate to be a nationwide standard.

The Court holds fast to the belief that the liberal rules of pleading in federal court should prevail in this equitable forum and, accordingly, discourages the sacrifice of truth and substance to form and sport. *See* Bankr.R. 7008 (incorporating Fed.R. Civ.P. 8(f)). But this is not an endorsement to disregard national bankruptcy rules which, for the most part, implement vital procedural and regulatory safeguards.

It is uncontroverted that the first paper the Debtor filed in response to the involuntary petition was his answer on July 6, 1988. The twenty days from the June 1, 1988 service of the summons and petition expired June 21, 1988 not fifteen days later on July 6, 1988. Moreover, despite counsel's representations to the contrary, it appears that Goldberg's letter was not filed with the Clerk's office until sent by Dove in late August at the Court's request. Absent compliance with Bankr.R. 1011(b) and (c), the Court was obligated, by virtue of Code § 303(h), to enter a default judgment in the instant involuntary proceeding, pursuant to Bankr.R. 1013(b), and allow the appointed trustee to proceed in administering the estate. *See In re Drexler Associates, Inc., supra,* 57 B.R. at 315; *In re Alta Title Co., supra,* 55 B.R. at 135–136; *In re Johnson,* 13 B.R. 342, 346 (Bankr.D. Minn.1981); *In re Nina Merchandise Corp.,* 5 B.R. 743, 746 (Bankr.S.D.N.Y. 1980); *In re Bingham Truck Lease, Inc.,* 4 B.C.D. 1025 (Bankr.E.D.Va.1978); BANKRUPTCY LAW MANUAL, *supra,* ¶ 2.10[2]

at 2–29; 2 COLLIER ON BANKRUPTCY, *supra,* at ¶¶ 303–41.

In addition, the facts alleged by the creditors in the petition, which satisfied Code § 303(a) and (b), were deemed admitted in the face of no answer and thus are not at issue. *See In re Visioneering Const., supra,* 661 at 119 (finding no abuse of discretion in affirming both district court and bankruptcy court's use of default procedures.); *In re Alta Title Co., supra,* 55 B.R. at 137.

The Court also notes the lack of any attempt to meet the excusable neglect standard under Bankr.R. 9006(b)(1) despite Debtor's counsel's efforts to bolster his belief in the timeliness of the answer through his lack of knowledge regarding prior "extensions" and the inability of his client to obtain counsel.[3]

Thus, this is not a case of clerical error. It is also clear that the Court did not labor under a "mistaken impression that no Answer had been received and filed in a timely fashion", as characterized by Pelland in his supporting affidavit. Additionally, the Debtor has neither pleaded, argued nor demonstrated "cause" within the meaning of subsection (b) of Fed.R.Civ.P. 60 to justify the setting aside of the Order of Relief.[4] Though a harsh result, there can be no other in furtherance of the plain language of Code § 303(h) embodying the Code's policy to expeditiously resolve involuntary proceedings. *See In re Albers, supra,* 71 B.R. at 40.

---

**3.** The standard of excusable neglect has been described as "the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform." *See Beneficial Finance Co. of Hartford v. Manning (In re Manning),* 4 B.C. D. 304, 305 (Bankr.D.Ct.1978), " 'Neglect is generally not excusable where it results from lack of knowledge of substantive and procedural aspects of bankruptcy practice.' " *Forbes v. Dixon (In re Dixon),* 89 B.R. 684, 685 (M.D.Tenn.1988) (quoting *Cohen v. Lopez (In re Lopez),* 39 B.R. 433, 437 (Bankr.D.R.I.1984)). *See also Cosmopolitan Aviation Corp. v. New York State Dep't of Transportation (In re Cosmopolitan Aviation Corp.),* 763 F.2d 507, 515 (2d Cir.1985) (inability or refusal to read and comprehend plain language of federal rules never satisfies excusable neglect standard).

It was not beyond Debtor's counsel's reasonable control to confirm his adversary's hesitant affirmation that July 6 was the last day to file an answer. This could have been accomplished by checking with the Clerk's office on the status of the involuntary case or by inquiring of Dove why such a date controlled a petition filed more than six weeks earlier. The Court's observation is buttressed by Pelland's disclosure in his affidavit that he was contacted by the Debtor on July 5, 1988. *See, e.g., In re Albers, supra,* 71 B.R. at 43.

**4.** The motion additionally suffered from being served seven days prior to the August 2 return date, instead of the required ten days, in contravention of Bankr.R. 9006(a) and Local Rule 25(c). This computation does not contemplate the potential three day addition under Bankr.R. 9006(f) for service by mail.

With regard to the second part of the instant motion, presumably made pursuant to Code § 363(b)(1), the Court notes that a copy of the purported contract to purchase, identified as Exhibit C in Pelland's affidavit, was not attached to the motion papers. Thus, it is impossible to rule on what seems to be, at best, a speculative sale based upon a record bereft of the proposed sale's terms and conditions. Additionally, the Debtor's concern for his equity does not satisfy the required "articulated business justification" for the sale. *See Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983). *See also Stephens Industries, Inc. v. McClung,* 789 F.2d 386 (6th Cir.1986).

In any event, by virtue of the Court's oral Order on October 25, 1988 granting the motion of the Fulton Savings Bank to lift the stay on the property at issue, the requested relief would appear moot. This is so notwithstanding the motion's defective notice under Bankr.R. 6004 and the questionable nature of the Debtor's standing to request authority to sell apparent property of the estate, *see, e.g, In re Robison,* 74 B.R. 646 (E.D.Mo.1987), on a record disclosing neither sale price nor real estate appraisals so as to indicate any equity towards which he might claim ownership and possible injury.

By reason of the foregoing, it is hereby

ORDERED:

1. That the Debtor's motion to vacate the Order of Relief, pursuant to Bankr.R. 9024, is denied.

2. That the Debtor's motion for authority to sell real property, with all liens and encumbrances to attach to the proceeds, is dismissed.