**In re Robert H. SHAPIRO, Debtor.**

**Bankruptcy No. 091–70306–21.**

United States Bankruptcy Court,
E.D. New York.

May 2, 1991.

Brian Isaac, Pollack, Pollack, Isaac & DeCicco, New York City, for debtor.

Aaron R. Cahn, Hayt, Hayt & Landau, Great Neck, N.Y., for petitioning creditors.

Edward Brooks, Pinks, Brooks, Stern & Arbeit, Hauppauge, N.Y., for Creditor Nassau Suffolk Lumber & Supply.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court are two motions by Robert Shapiro, an involuntary Chapter 7 debtor:

(1) A motion to extend the time for him to file a responsive pleading to the involuntary petition;

(2) A motion to dismiss the involuntary petition because of improper venue and lack of qualified petitioning creditors.

In response, the petitioning creditors, in their answering memorandum, have moved informally that a voluntary Chapter 7 petition filed in the Southern District of Florida by the Debtor subsequent to the filing of the petition in this Court be stayed or transferred to this District.

The files of the Court and the papers submitted by the parties disclose the following:

On February 20, 1991 an involuntary petition under Chapter 7 was filed against Robert Shapiro in the Eastern District of New York by three persons alleging themselves to be holding claims against him, not contingent as to liability and not subject to a bona fide dispute, amounting in the aggregate to at least $5,000. One of the unpaid claims is described as a judgment entered on September 29, 1988 for $711,-397.46 plus interest. The three claims exceed $800,000. The petition alleges that the Debtor's principal place of business and residence, his principal asset and domicile have been within this District for the 180 days preceding the filing of this petition.

The petition was served by mail on February 20, 1991 and was received by Shapiro some time prior to March 7th, 1991. The summons sent the Debtor with the petition advised him that he was required to answer or move within 20 days after service and that if he failed to respond an order for relief would be entered. Shapiro neither moved nor answered in this Court within this time frame. Instead, on March 4, 1991, Charles P. Pugatch, Esq., a Florida attorney whom he had first consulted on December 10, 1990 with respect to filing a voluntary Chapter 7 petition, filed on his behalf a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Southern District of Florida. In that court, a trustee was appointed and a meeting of creditors scheduled. Thereafter, on March 7, 1991, Mr. Pugatch wrote the attorney for the petitioning creditors advising him of the filing of the voluntary petition in Florida. He requested a voluntary dismissal of the New York petition and stated that if that was not forthcoming Mr. Shapiro would arrange to secure counsel in New York to seek dismissal of the New York petition. The attorney for the petitioning creditors in a letter dated March 12th responded that the involuntary petition would not be dismissed.

On March 19, 1991, Mr. Shapiro consulted with New York counsel representing him on the current motions, Pollack, Pollack, Isaac & DeCicco ("PPI & D").

On March 21, 1991, this Court having received from Shapiro no answer or response to the petition entered an Order for Relief. On April 1, 1991, the United States Trustee appointed Andrew M. Thaler, Esq. as Interim Trustee in this proceeding.

On March 28, 1991, PPI & D filed with this Court a motion pursuant to Bankruptcy Rule 9006 requesting an order extending the time within which to file a responsive pleading to the involuntary petition filed on February 20, 1991. Attached to this application was a memorandum by PPI & D and an affidavit by Mr. Pugatch, to which were attached the correspondence with New York counsel and which outlined the chronology recited above; the consultation of Shapiro with Pugatch on December 10, 1990; the filing of the involuntary petition on February 20, 1991; the service of the involuntary petition on Shapiro; the filing of the voluntary petition in Florida on March 4th; the communications between counsel terminating in the refusal of New York counsel to dismiss the involuntary petition; and the retention of New York counsel on March 19, 1991.

The memorandum of PPI & D asserted that a motion to dismiss would have been filed earlier but counsel was unable to contact Mr. Pugatch due to Mr. Pugatch's engagement in other matters.

On April 10, 1991, PPI & D filed a motion returnable the same date as its motion for an extension of time to file a responsive pleading. The motion to dismiss the invol-

untary petition was made on the grounds that it was not supported by the requisite number of undisputed creditors as required by 11 U.S.C. § 303 and that venue was improper under 28 U.S.C. § 1408 within the Eastern District of New York.

Attached to the motion is an affidavit by Robert Shapiro reciting that the first meeting of creditors in Florida is scheduled for April 18, 1991, that numerous creditors have contacted him in Florida saying that they have retained Florida counsel and are planning to attend the first meeting in Florida. The affidavit also states that he has filed a statement of affairs and a set of schedules in the Florida Bankruptcy Court. According to his affidavit he has been a resident of Florida since 1988 and he and his wife have been living in Palm Beach, Florida, continuously since November 1990, that he has not owned any real estate in any other state since 1988 and that he has maintained his primary business office as a mortgage broker in Florida since August 1990. Further, Shapiro denies that Nassau Suffolk Lumber Corporation ("Nassau Suffolk"), one of the three petitioning creditors, is a creditor and he includes among the moving papers copies of two cancelled checks and a letter showing payments to Nassau Suffolk in 1989.

Both motions are opposed by the petitioning creditors. As already noted, in the Reply Memorandum of the petitioning creditors they request an order staying all proceedings in the voluntary case and transferring the voluntary case to this District. They say that because of the short time frame provided for hearing the Debtor's motions they have not had the opportunity to formally move for this relief. Nonetheless, they say, "consideration of this request will serve the interests of judicial economy, because a determination pursuant to Rule 1014(b) will obviate the need to consider the venue objections raised by the debtor." (Memorandum in Opposition to Motion to Dismiss and in Support of Application to Determine Venue of Multiple Bankruptcy Proceedings (hereinafter "Memorandum"), p. 2, n. 1).

Among the reply papers is an affidavit from Nassau Suffolk asserting that Robert Shapiro is indebted to it, despite the payments referred to by Mr. Shapiro, in the amount of $19,553.35, as a result of Mr. Shapiro's personal guaranty of the obligations of D & P Construction of Long Island, Inc.

The petitioning creditors vigorously dispute the Debtor's claim that venue is improper in this District. In their memorandum they assert the following facts, which they presumably are prepared to prove:

> The debtor is a sophisticated real estate developer who, historically, concentrated all or virtually all of his business activities in the New York Metropolitan Area.... The debtor operates more than half a dozen corporations engaged in the business of home building and/or mortgage brokering out of a single office suite in Southampton, New York. He is a licensed real estate broker in the State of New York. The vast bulk of the debtor's obligations are to New York creditors.... As of the petition date, the debtor was defending more than a dozen lawsuits pending in the New York Metropolitan Area, including a $2,000,000.00 lawsuit brought by a neighbor in Westhampton Beach for malicious destruction of that neighbor's wooden walkway.

Memorandum, pp. 2–3.

Submitted as exhibits are a Newsday article, dated June 23, 1989, describing the $2 million lawsuit brought by Milton Silver, a New York dentist, against Robert Shapiro, his neighbor in Westhampton; a Complaint dated December 21, 1990 filed against Robert Shapiro and his wife by a law firm alleging failure to pay the agreed upon amount for legal services rendered in connection with dozens of litigation involving millions of dollars of debts which defendants and their companies have failed to pay; an opinion rendered on January 5, 1990 by the Hon. Harold Baer, Jr., in the Supreme Court of New York County in an action brought by the European American Bank against Robert Shapiro which de-

scribes how the debtor has arranged to put all his assets and his income in the name of his wife:

His wife is an owner of five companies located in Southampton that build and sell houses. She does no work for these companies. Defendant works for the five companies but receives no salary from any of them. Various homes built by these companies remain unsold but two companies grossed $10 million on the sale of a small number of homes. Defendant's wife leases three vehicles for him, two Mercedes and an AMC Jeep. His wife pays all defendant's expenses, including food, clothing and plane fare. His wife pays all expenses on the houses. She pays for vacations for defendant, who this year visited France, Tahiti and Australia. Defendant has several credit cards on which he charges several thousand dollars a month.

(Affirmation of Aaron R. Cahn, April 11, 1991, Exhibit H.)

Also submitted as exhibits are a mail solicitation sent out in 1991 by the Dunewood Funding Corporation over the signature of Robert Shapiro, President, offering to have a mortgage loan approved in 30 minutes and advertisements for Dunewood Funding Corporation placed in various New York newspapers in January, March, May, June, July and August 1990.

## DISCUSSION

■ Bankruptcy Rule 1011(b) requires defenses or objections to an involuntary petition to "be filed and served within 20 days after the service of the summons." Bankruptcy Rule 9006(b) permits a court to enlarge this time on request made before the expiration of the period originally prescribed or on motion after the expiration of the specified period. However, where such relief is asked way after the expiration of the specified period, the Court is only authorized to extend the time "where the failure to act was the result of excusable neglect." The debtor's moving papers provide no explanation for the failure to act prior to March 21, 1991, let alone reasons adding up to excusable neglect. *In re Reb-*

*eor,* 93 B.R. 16, 22, n. 3 (Bankr.N.D.N.Y. 1988) (and cases there cited).

Shapiro and his Florida counsel knew as early as March 7, 1991 of the pending New York petition. Even though his New York counsel was not consulted until March 19, 1991 there was still time to seek an adjournment either from opposing counsel or the Court, yet apparently nothing was done. It is difficult not to infer that the delay was so far from excusable as to be deliberate, so that the Florida proceeding could be so far along as to force creditors to litigate in Florida or even to lead to the debtor's discharge before this Court could act.

Accordingly, the motion to enlarge the time for the debtor to answer the involuntary petition is denied.

■ Denying that motion is dispositive of his objections to the eligibility of the three petitioning creditors and to venue. As in the case of any pleading the allegations of the petition if not denied are deemed admitted. They were not controverted here. The petition alleges that the three creditors hold undisputed, bona fide claims and allege the facts making venue appropriate in this District. Defendant has not denied them and, therefore, they stand admitted.

■ Furthermore, neither the requirement that three undisputed creditors join in an involuntary petition (11 U.S.C. § 303(b)) nor that the petition be filed in the district in which the debtor for the greater portion of the preceding 180 days has maintained his domicile, residence or principal place of business or principal assets (28 U.S.C. § 1408) is jurisdictional. *In re Barth,* 109 B.R. 570 (Bankr.D.Conn.1990); *In re Earl's Tire Service, Inc.,* 6 B.R. 1019 (D.C.Del. 1990); 1 Collier on Bankruptcy, ¶ 3.02[4][g] (15th ed. 1991); *see also, In re Rebeor,* 93 B.R. 16 (Bankr.N.D.N.Y.1988).

Thus, improper venue can be waived as it can be waived in ordinary civil litigation.

Bankruptcy Rule 1014(a)(2) authorizes the Court to dismiss or transfer a case to another district if a petition has been filed in an improper district. But Bankruptcy

Rule 1014(a)(2) requires that dismissal or transfer be requested by "timely motion of a party in interest." This is consistent with the law "that a venue defect, not properly objected to, does not prevent a district court from proceeding and acting upon the merits of the controversy. Unlike the matter of jurisdiction, venue was (and remains) a privilege personal to each defendant, which can be waived, and is waived by him unless timely objections are interposed." 1 Collier on Bankruptcy, ¶ 3.02[4][g] (15th ed. 1991). *See also, Panama Railroad Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924).

■ Robert Shapiro, having filed no answer, admitted the well pleaded allegations of the petition and waived his objections to venue by failing to assert them timely. The result reached here is not only compelled by the lack of diligence of the debtor, but is most consistent with the equities in the case. The reason for not permitting creditors whose debts are disputed by a debtor to join in an involuntary petition in bankruptcy is to prevent abuse of the bankruptcy laws by letting a dissatisfied creditor throw into question the solvency of an entity which has good reason for not paying a specific debt. In this case the Debtor, by voluntarily filing in Florida, concedes that no financial harm has been done him by the involuntary petition. Furthermore, there appear to be more than enough creditors to make up the required number even if evidence of some payments to a supplier disqualified that supplier from joining in the petition.

As to the allegations of the impropriety of venue, the advertisements in the New York newspapers and the presence of at least three creditors, disputed or not, in the New York area indicate that the allegations in the complaint are not groundless and that the creditors had substantial reasons for believing the Debtor's principal business activities to be located in the New York Metropolitan Area.

For the foregoing reasons, the debtor's motion to dismiss is denied.

■ It would be improper to permit two Chapter 7 proceedings to proceed simultaneously. Bankruptcy Rule 1014(b) anticipates and provides for just such a situation. It sets forth the procedure to be followed when petitions involving the same debtor are filed in different courts. It provides:

> If petitions commencing cases under the Code are filed in different districts by or against the same debtor, ... on motion filed in the district in which the first petition is filed and after hearing on notice to the petitioners and other entities as directed by the court, the court may determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed. Except as otherwise ordered by the court in the district in which the first petition is filed, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

This is the court in which the first petition was filed and the petitioning creditors have clearly indicated their desire to have this Court determine the district in which these cases should proceed. However, they have not formally moved for such relief. In view of the fact that a formal motion would automatically stay the proceedings in the Florida Court, this Court does not believe that the petitioning creditors should rely on a request as informal as that incorporated in their Memorandum. This Court strongly suggests that if the Florida proceedings are to be stayed until it can be determined by this Court in which court they should continue as per Bankruptcy Rule 1014(b) "in the interest of justice or for the convenience of the parties" that the petitioning creditors move for such relief.

The foregoing constitutes the decision of this Court on all the pending matters.

An Order consistent with this Opinion will be issued contemporaneously because in the circumstances delay is inadvisable.