**In re Vern W. GALE and Patricia S. Gale, Debtors.**

**Bankruptcy No. 94–20885.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

Feb. 17, 1995.

Bernard J. Caspar, Gaylord, MI, for debtors.

Norman K. Droste, Traverse City, MI, for Great Lakes Bancorp.

## OPINION REGARDING ALLEGED DEBTORS' MOTION TO DISMISS JOINT INVOLUNTARY PETITION AND PETITIONING CREDITOR'S MOTION TO SEVER

ARTHUR J. SPECTOR, Bankruptcy Judge.

On September 20, 1994, Great Lakes Bancorp commenced an involuntary chapter 7 bankruptcy case against Vern and Patricia Gale, who are husband and wife. Because the Bankruptcy Code provides for a joint bankruptcy proceeding only if the proceeding is voluntary, *see* 11 U.S.C. §§ 302(a) and 303(a), the Court entered an order "to show cause why [the] case should not be dismissed for improper joinder." Order to Show Cause. A hearing pursuant to this order was held on October 13, 1994, at which the Court decided to postpone dismissal pending submission by Great Lakes of a motion to sever the case into two separate involuntary proceedings.

Great Lakes filed such a motion on October 20, 1994. Four days later, the Gales filed a motion seeking dismissal under F.R.Civ.P. 12. A hearing on both motions was held

December 2, 1994, and the Court reserved decision on the question of whether it has the discretion to grant Great Lakes' motion. For the reasons which follow, I believe the Court has such discretion, and should exercise it.

## DISCUSSION

Several courts have held or suggested that dismissal is mandatory under the circumstances presented here. *See In re Benny,* 842 F.2d 1147, 1149 (9th Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 806, 102 L.Ed.2d 796 (1989) (dictum); *In re Busick,* 719 F.2d 922, 926 n. 7 (7th Cir.1983) (dictum); *In re Jones,* 112 B.R. 770, 773, 20 B.C.D. 594 (Bankr.E.D.Va.1990); *In re Calloway,* 70 B.R. 175, 180 (Bankr.N.D.Ind.1986). The reasoning in *Jones* entails a simple, two-step process: (1) the court does not have subject matter jurisdiction over a joint involuntary case; and (2) lacking such jurisdiction, a court has no choice but to dismiss the case. *See Jones,* 112 B.R. at 773; *see also Benny,* 842 F.2d at 1149 (citing the Advisory Committee Note to F.R.Bankr.P. 1011, which "states that an objection on the ground that a debtor is not amenable to an involuntary petition goes to subject matter jurisdiction and may be made at any time consistent with Fed.R.Civ.P. 12(h)(3)[, which in turn] provides that '... the court shall dismiss the action'" if there is no such jurisdiction).[1] However, neither of these assertions is persuasive.

■ Turning first to the latter of the two assertions, it is true that under F.R.Civ.P. 12(h)(3)—which may be rendered applicable here by Court order, *see* F.R.Bankr.P. 1018 and 7012(b)—dismissal of a case is mandatory if the court does not have subject matter jurisdiction. *See, e.g., Manway Construction Co. v. Housing Authority of the City of Hartford,* 711 F.2d 501, 503 (2d Cir.1983). But as sweeping as the rule might seem, it is subject to exceptions.

■ One such exception, which is directly pertinent to this case, occurs in civil actions in which federal jurisdiction is alleged to exist based on diversity of citizenship under 28 U.S.C. § 1332. Diversity jurisdiction is a species of subject matter jurisdiction. *See, e.g., Salve Regina College v. Russell,* 499 U.S. 225, 228, 111 S.Ct. 1217, 1219, 113 L.Ed.2d 190 (1991). Accordingly, if the citizenship of one or more parties in a lawsuit deprives the court of diversity jurisdiction, Rule 12(h)(3) would suggest that the only appropriate response is to dismiss the case. Yet it is viewed as perfectly acceptable under such circumstances for the court to drop the nondiverse party pursuant to F.R.Civ.P. 21 if that party is dispensable. *See* 3A *Moore's Federal Practice,* ¶ 21.03[2] (2d ed. 1994).

Thus for all intents and purposes, Rule 21 is interpreted as providing that, notwithstanding Rule 12(h)(3), parties may be dropped if necessary to ensure subject matter jurisdiction based on diversity of citizenship. *Cf. id.* at n. 1 (noting that, although F.R.Civ.P. 12(h)(3) purports to require dismissal if subject matter jurisdiction does not exist, "28 U.S.C. § 1653 provides: 'Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.'"); *see generally* 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d,* § 1393 (1994) ("'If Federal [subject matter] jurisdiction is not apparent, the Court ... must[ ] refuse to proceed with the determination of the merits of the controversy, *unless this failure can be cured.*'" (citation omitted; emphasis added)).

This exception to Rule 12(h)(3) is of particular relevance here because Rule 21 also authorizes courts to sever claims, and Great Lakes is relying upon that very rule. Neither the Gales nor the cases which they cite attempt to explain why severance under Rule 21 is impermissible if the court lacks subject matter jurisdiction, even though dropping a party under the same rule and circumstances is commonplace. I therefore reject the argument.

1. *Benny*'s paraphrasing of the Committee Note is inaccurate. *See* Advisory Committee Note to F.R.Bankr.P. 1011 (1983) ("[A]n objection that a debtor is *neither entitled to the benefits of the* Code *nor* amenable to an involuntary petition goes to jurisdiction of the subject matter...." (emphasis added)).

Even more dubious is the argument that a bankruptcy court does not have subject matter jurisdiction over a joint involuntary proceeding. The term "subject matter jurisdiction" is confusing because it concerns more than just the "subject matter" of a law suit. As noted in one treatise, "[f]ederal subject matter jurisdiction can be divided into two basic categories: first, jurisdiction based on the nature of the parties, for example, citizens of different states; and second, jurisdiction based on the nature of the matter, such as questions arising under the laws of the United States." Edward I. Niles, *Federal Civil Procedure,* ¶ 2.210 (2d ed. 1992). Since it is obvious that bankruptcy courts have jurisdiction over involuntary bankruptcy proceedings, the "nature of the matter" is not at issue in this case. Rather, the focus here is on "the nature of the parties."

In this regard, the cases which support the Gales offer surprisingly little in the way of real analysis. *Calloway* sheds the most light, asserting that a husband and wife *"as one entity* can no more be an involuntary debtor in one case pursuant to one involuntary petition than can a farmer (11 U.S.C. § 303(a)), or a railroad under chapter 7 (11 U.S.C. § 109(b)(1))." 70 B.R. at 180 (emphasis added). *Jones* followed suit, concluding "that the *Calloway* decision represents the correct approach," 112 B.R. at 773, and explicitly noting the latter court's "[f]inding that two individuals could not be a *single involuntary debtor* in one case, just as a farmer in an involuntary case ... or a railroad under Chapter 7 ... could not be debtors." *Id.* at 772 (emphasis added). The inference I draw from the highlighted portions of these passages is that the holdings in *Calloway* and *Jones* are premised on the assumption that husband and wife merge into a single identity when a joint petition is filed by or against them.

It seems that the Gales adopted this theory. Their brief quoted the passage from *Calloway* set forth above, and their counsel asserted at the December hearing that dismissal of only one of the spouses is not possible because the case involves "an estate by the entireties." This assertion is seemingly tantamount to endorsing *Calloway* 's

single-entity analysis because the concept of "[t]he estate by the entirety ... rests upon the fiction of a oneness of husband and wife." *In re Abdallah,* 39 B.R. 384, 387, 10 C.B.C.2d 899 (Bankr.D.Mass.), *remanded on other grounds,* 46 B.R. 718 (D.Mass.1984), *appeal dismissed,* 778 F.2d 75 (1st Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1986) (citations omitted).

Whatever currency the notion that the marital unit is a legal entity unto itself continues to hold under state law, the doctrine is not recognized by the Bankruptcy Code with respect to voluntary joint cases. That much is made clear by § 302(b), which states that "[a]fter the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." If a joint case involved only one entity, then by logical extension there could be only one estate, and talk of "consolidation" would be nonsensical. *See also* F.R.Bankr.P. 1015(b) ("If a joint petition ... [is] pending ... the court may order a joint administration of the estates."); 11 U.S.C. § 522(m) (stating generally that the property exemption provisions "shall apply separately with respect to each debtor in a joint case").

■ Thus as a simple matter of statutory construction, the single-entity theory must be rejected insofar as it pertains to voluntary joint petitions. *See, e.g., Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112, 111 S.Ct. 2166, 2172, 115 L.Ed.2d 96, 107 (1991) ("[W]e construe statutes, where possible, so as to avoid rendering superfluous any parts thereof."). Many courts have recognized that a voluntary joint petition entails two separate legal entities and, at least until consolidation is ordered, two separate estates. *See, e.g., In re Reider,* 31 F.3d 1102, 1109 (11th Cir.1994); *In re Knobel,* 167 B.R. 436, 440 (Bankr.W.D.Tex.1994); *In re Grimm,* 82 B.R. 989, 993, 18 C.B.C.2d 590 (Bankr.W.D.Wis.1988); *In re Birch,* 72 B.R. 103, 104, 15 B.C.D. 1150, 16 C.B.C.2d 849 (Bankr.D.N.H.1987); *In re Masterson,* 55 B.R. 648, 649 (Bankr.W.D.Pa.1985); *In re Crowell,* 53 B.R. 555, 557, 13 C.B.C.2d 878 (Bankr.M.D.Tenn.1985); *In re Stuart,* 31 B.R. 18, 19, 10 B.C.D. 540 (Bankr.D.Conn. 1983). The obvious corollary to this principle

is that an involuntary joint petition likewise brings before the court two separate legal entities and estates.

■ When analyzed from this perspective, the Gales' objection to the motion to sever loses its vitality. The Gales do not suggest that either of them could not individually be made the subject of an involuntary bankruptcy proceeding, and in substance that is all that Great Lakes did when it filed the joint petition. *Cf. Stuart,* 31 B.R. at 19 ("Section 302 was designed for ease of administration and to permit the payment of only one filing fee."). Great Lakes did not drag into bankruptcy an entity with respect to which the Court has no statutory authority to order relief.[2] I therefore conclude that the Court possesses subject matter jurisdiction. *Cf.* W. Drake and J. Morris, *Eligibility for Relief Under Chapter 13,* 57 Am.Bankr.L.J. 195, 219 (1983) ("[J]urisdiction involves the power to hear a case under title 11 of the United States Code. Thus, the debtor may not be eligible for chapter 13 relief; however, title 11 of the United States Code generally would apply to that petitioner.... Only when a petitioner or an alleged debtor in an involuntary case is not eligible for relief under any chapter of the Bankruptcy Code would the court truly be without jurisdiction in a matter." (footnote omitted)); *id.* at 219 n. 144 ("The only entities ... that would present this issue of a lack of subject matter jurisdiction due to general ineligibility for bankruptcy relief are banks, savings and loans, credit unions, insurance companies, and their foreign counterparts. 11 U.S.C. § 109(b)(2), (3) .... ").

■ Since the mistake made by Great Lakes is nonjurisdictional, dismissal is not mandatory. But that still leaves the Court with the question of how to dispose of the parties' respective motions. In seeking severance, Great Lakes relied on the Court's general equitable powers under § 105, and F.R.Civ.P. 21. *See* Great Lakes' Motion to Correct/Amend at ¶ 7.

Rule 21, which is made applicable to adversary proceedings by F.R.Bankr.P. 7021, states in its entirety as follows:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

F.R.Civ.P. 21.

*Calloway* indicated that this rule cannot be utilized in the manner sought by Great Lakes:

> [Rule 21] does not contemplate the creation of a new and separate case versus the party who has been dropped. A *claim* versus a party may be servered [sic] and separately proceed. However, though pursuant to this rule the Court might sever the claim versus one of the parties, it still does not create a new and separate case. The rule merely provides that the severed claims will proceed separately in the *same* case. This is clearly impossible in the case *sub judice.*

*Calloway,* 70 B.R. at 179.

This passage is rather opaque. If *Calloway* meant to suggest that severance under Rule 21 does not establish a new and distinct action, the court is clearly wrong. *See, e.g.,* 3A *Moore's Federal Practice,* ¶ 21.05[2] (2d ed. 1994) ("Severance [under Rule 21] ... makes a separate and independent action of the severed claim, and a judgment on such a claim is a final judgment appealable under 28 U.S.C. § 1291.").

It is more likely that *Calloway* took the position that severance under Rule 21 cannot be used as a tool to split a single case against two improperly joined defendants into separate cases against each of the defendants. But there is nothing in the rule which supports that view, and at least one court has implicitly rejected it. *See Lynn v. United States,* 110 F.2d 586, 589 (5th Cir.1940) ("[I]n the spirit of Rule 21, the petition ought not to

---

**2.** For this reason, the excerpt from the Advisory Committee Note to F.R.Bankr.P. 1011 which *Benny* viewed as significant, *see supra* p. 533, is

not relevant. The Gales' objection goes to the question of joinder, not "amenab[ility] to an involuntary petition."

be dismissed for the misjoinder [of the United States and the Tennessee Valley Authority], but the claims ought to be separated for trial, with a repleader if deemed advisable."); *see also* 3A *Moore's Federal Practice,* ¶ 21.05[2] (2d ed. 1994) ("To the extent that the joinder is improper ... and the court has jurisdiction of both claims, the court should be able to sever them and proceed in each case separately...." (footnote omitted)); 7 Wright & Miller, *Federal Practice and Procedure: Civil 2d,* § 1689 (1994) ("[T]he severance of claims is an appropriate remedy ... when a private individual is [improperly] joined as a codefendant with the United States ..."). Thus, *Calloway* notwithstanding, severance under Rule 21 is a viable option under the circumstances presented here. *See King v. Fidelity Nat'l Bank of Baton Rouge,* 712 F.2d 188, 190–91 (5th Cir. 1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984) (directing the lower court to utilize Rule 21 to drop one of the debtor spouses against whom an involuntary joint petition had been filed); *In re Western Land Bank,* 116 B.R. 721, 726, 20 B.C.D. 1282, 23 C.B.C.2d 1089 (Bankr. C.D.Cal.1990) (using Rule 21 to drop parties that the petitioning creditor mistakenly believed were aliases of the involuntary debtor); *In re South Florida Title,* 92 B.R. 548, 549 (Bankr.S.D.Fla.1988) (following *King, supra* ); 2 *Collier on Bankruptcy,* ¶ 303.15[10] (15th ed. 1994) ("If parties other than the debtor have joined as defendants in an involuntary petition for relief, ... the non-debtor defendant should be dropped as a party pursuant to Rule 7021...."). 

■ The Gales stressed the fact that, pursuant to F.R.Bankr.P. 1018, Rule 21 does not apply to contested involuntary proceedings unless the court so orders. *See* Gales' Response to Great Lakes' Motion to Correct/Amend at p. 2. They also called attention to an Advisory Committee Note to Rule 1018 which provides that Rule 21, among other rules of civil procedure, "will rarely be appropriate" in this context because "the objective of [such] Rules ... to facilitate the settlement of multiple controversies involving many persons in a single lawsuit is not compatible with the exigencies of bankruptcy administration." *See id.* at pp. 2–3.

The "exigencies" to which the Committee makes reference are "the special need for dispatch and expedition in the determination of the issues in an involuntary petition." Advisory Committee Note to F.R.Bankr.P. 1018 (1983). But while the "need for dispatch" may generally be a factor in involuntary proceedings, there is no indication that that is true in this particular case. And even if time were of the essence, the Court could easily address that concern by conditioning its severance order on Great Lakes filing the necessary papers within a specified period of time, failing which the case(s) would be dismissed.

Aside from their reliance on Rule 1018 and the accompanying Committee Note (i.e., aside from arguing in effect that matters are too pressing to permit resort to Rule 21), the Gales articulated no reason why application of that rule would be inappropriate. On the other hand, there is at least one good reason why the case should not be dismissed. The federal courts subscribe to the sensible view that, absent some overriding competing concern, cases should be resolved based on the merits, rather than dismissed because of procedural irregularities. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *Reizakis v. Loy,* 490 F.2d 1132, 1135 (4th Cir. 1974) (referring to "the sound public policy of deciding cases on their merits"). Indeed, this philosophy is reflected in the very rule which Great Lakes seeks to invoke. *See* F.R.Civ.P. 21 ("Misjoinder of parties is not ground for dismissal of an action.").

The reluctance to honor form over substance should be particularly acute when dealing with a bankruptcy petition, as dismissal and the subsequent filing of a new petition could have a significant impact on the trustee's ability to challenge pre-petition property transactions. *See Western Land Bank,* 116 B.R. at 725 (Dropping the improperly joined parties "preserves time sensitive causes of action under the avoiding

powers of the Bankruptcy Code that might otherwise be lost on dismissal of the petition.").[3]

The mistake which Great Lakes made in filing a joint petition was purely technical. There is no indication that the Gales were prejudiced by the mistake. *Cf., e.g., Reizakis,* 490 F.2d at 1135 ("[G]enerally lack of prejudice to the defendant ... is a factor that must be considered in determining whether the trial court exercised sound discretion" in dismissing a case under F.R.Civ.P. 41(b) for failure to prosecute.). I therefore conclude that Great Lakes' motion should be granted. An order consistent with this opinion shall be entered contemporaneously with this opinion.

---

**3.** In fact, Great Lakes' reliance on § 105 is apparently based on its assertion that certain avoidance actions might be lost if it were obliged to file new petitions. *See* Great Lakes' Motion to Correct/Amend at ¶ 5. However, disposition of the motion to sever should not turn on the veracity of that assertion, nor is § 105 applicable.