**In re Jack A. BOWSHIER, Linda L. Bowshier, Debtors.**

**No. 04-30910.**

United States Bankruptcy Court, S.D. Ohio, Western Division at Dayton.

Aug. 18, 2004.

David M. Martin, Springfield, OH, Thomas R. Noland, Statman, Harris, Siegel & Eyrich, Dayton, OH, for debtors.

James S. Huggins, Marietta, James F. Pfifer, Springfield, OH, Valerie R. Wilt, Springfield, OH, for petitioning creditor.

Barbara K. Hamilton, Becket and Lee LLP, Newark, NJ, Emerson R. Keck, Dayton, OH, for creditor.

## FACTUAL AND PROCEDURAL BACKGROUND

LAWRENCE S. WALTER, Bankruptcy Judge.

On February 6, 2004, three petitioners, Peoples Bank, N.A., U. Timothy Juergens, and the law firm of Juergens, Wilt & Strileckyj, L.L.P., filed a joint involuntary petition against Jack A. and Linda L. Bowshier ("Debtors") who are husband and wife [Doc. 1]. The petition asserts that Peoples Bank holds a claim against the Debtors in the form of a "note / judgment" in the amount of $455,000. U. Timothy Juergens holds a "guaranty / judgment" claim in the amount of $500,000. Finally, the law firm of Juergens, Wilt & Strileckyj, L.L.P. has an "open account" claim for $34,337.66.

Following an extension of time requested by the Debtors, the Debtors filed an answer [Doc. 11] in which they averred, in the form of objections, that: 1) a joint involuntary petition is "contrary to USC § 303(a)" and the "Debtors should be separated"; 2) the petitioners are not distinct entities and do not have separate and distinct claims against the Debtors; and 3) a court document entitled "Order of Receipt Under Seal" contained an incorrect date. No other pleadings were filed by either side and the matter came before the court for hearing on May 13, 2004.

At the hearing, the Debtors did not dispute one of the prerequisites to an involuntary filing, that they were not paying their debts as such debts became due. [Transcript from May 13, 2004 hearing ("Tr."), pp. 10, 23–25.] However, they maintained the three defenses set forth in their answer.[1] The court dispensed with the third issue at the hearing. The incorrect date was on a notice of the involuntary filing directed to the Debtors, a document that was not part of the official case file or reflected in the docket. Neither the document nor the incorrect date was of any consequence or relevance to the proceeding.

With respect to the other two defenses raised by the Debtors, the court took evidence in the form of testimony and exhibits at the hearing. The court reserved a final ruling until the parties had an opportunity to brief the critical issue of whether the court has subject matter jurisdiction over a joint involuntary petition, and if not, whether the court has discretion to cure the defective joint petition or must dismiss the case.

---

1. In addition to the defenses raised in the Debtors' answer, Debtor Jack Bowshier testified that he disputes the debt owed to the law firm of Juergens, Wilt & Strileckyj, L.L.P. [Tr. p. 25.] However, neither the Debtor nor his counsel provided a factual or legal basis for the dispute at the hearing or in post-hearing briefing. Consequently, the court concludes that the Debtors have not raised the issue of a "bona fide dispute" as to the claim under 11 U.S.C. § 303(b) sufficient to call into question the evidence presented by the petitioning creditor.

The petitioning creditors were anxious to avoid dismissal and maintain the original petition filing date in order to preserve an alleged preference recovery. Although the petitioners had made no formal request to remedy the defective joint petition prior to the hearing, they requested an opportunity to do so at the close of the hearing and subsequently filed a motion for such relief together with their post-trial brief. [Doc. 14.]

Upon consideration of the record, the briefs of the parties, and the relevant statutes, case law, and procedural rules, the court makes the following determinations: 1) the court has subject matter jurisdiction; 2) the petitioners constitute the requisite number of qualifying creditors holding distinct claims against each of the Debtors as required by 11 U.S.C. § 303(b); and 3) that all other contested requirements and grounds for relief have been met as to each of the Debtors. Consequently, the court grants the petitioners' request to sever the bankruptcy cases. The petitioners may modify the petitions accordingly and the court will enter separate orders for relief against each of the Debtors.

### *LEGAL ANALYSIS*

**I. Subject Matter Jurisdiction and a Defective Involuntary Petition under Section 303(a)**

■ Neither the parties nor the commentators dispute that the filing of an involuntary petition against joint debtors is prohibited. 2 Collier on Bankruptcy § 303.02[5]—[6] (15th ed. updated June 2004); 1 Norton Bankruptcy Law Practice 2d § 21:1 n.1 (1994 ed. updated June 2004). Nor has the court found any reported cases to the contrary. Section 303(a) of the Bankruptcy Code states that "[a]n involuntary case may be commenced only under chapter 7 or 11 of this title, and only

against a *person* ... that may be a *debtor* under the chapter under which such case is commenced." 11 U.S.C. § 303(a) (emphasis added). This section, establishing the requirements for initiating an involuntary proceeding, makes no reference to filings against joint debtors and, instead, refers to a "debtor" only in the singular. However, the issue is somewhat clouded by the rules of construction set forth in section 102 stating that "In this title ... the singular includes the plural[.]" 11 U.S.C. § 102(7). Only when section 303 is read in conjunction with section 302, does it become more clear that joint petitions must necessarily be voluntary. Section 302(a) states as follows:

A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

11 U.S.C. § 302(a). The legislative history of this section, although scant, also supports this interpretation: "A joint case is a voluntary bankruptcy case concerning a wife and husband." H.R.Rep. No. 95–595, at 321 (1977); S.Rep. No. 95–989, at 32 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6277, 5787, 5818. Consequently, the court concludes that these statutory provisions, when read together, create a prohibition against a joint involuntary filing. However, the court finds it understandable that time-pressured creditors might mistakenly file an involuntary petition against joint debtors. The question for the court to answer is what are the consequences of such a defect in an involuntary petition.

■ Judicial views as to the consequences of filing a defective joint involun-

tary petition are sharply divergent. A number of courts hold that a bankruptcy court lacks subject matter jurisdiction over an involuntary joint petition and, consequently, the court can do nothing other than immediately dismiss the case. *In re Calloway,* 70 B.R. 175 (Bankr.N.D.Ind. 1986); *In re Jones,* 112 B.R. 770 (Bankr. E.D.Va.1990); *In re Anderson,* 94 B.R. 153 (Bankr.W.D.Mo.1988); *In re Busick,* 719 F.2d 922, 926, n. 7 (7th Cir.1983) (stating in dicta that, "[w]ere we to reach the issue, we might well be inclined . . . to characterize the defect in the original joint involuntary petition as jurisdictional rather than as an 'insubstantial procedural defect'. . . .").

Other courts faced with the prospect of an aberrant joint involuntary petition have allowed the defect to be procedurally remedied and have either skirted the jurisdictional issue or boldly declared that the court does indeed retain subject matter jurisdiction to allow the cure of the defect. *In re Allen,* 896 F.2d 416 (9th Cir.1990) (holding that the submission of a defective involuntary joint petition, corrected to include only one debtor's name at the time of filing and prior to the issuance of the summons, was a filing against only one debtor and, consequently, valid); *In re Benny,* 842 F.2d 1147 (9th Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 806, 102 L.Ed.2d 796 (1989) (concluding that voluntary conversion of an involuntary joint petition to a chapter 11 case supplied the missing element of voluntariness and cured the jurisdictional defect); *King v. Fidelity National Bank of Baton Rouge,* 712 F.2d 188 (5th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984) (dismissing wife, but allowing involuntary petition against husband to remain because continuing case against one spouse would bring all community property into the estate and thereby avoid prejudice to creditors); *Bank of America, N.A. v. Weese,* 277 B.R. 241 (D.Md.2002) (allowing amendment of petition under Fed. R. Bankr.P. 7015(a) to drop one spouse prior to responsive pleading); *In re Alexander,* 1999 WL 240336 (Bankr.D.Vt. April 14, 1999) (granting Fed. R. Bankr.P. 7015(a) motion to amend petition that was filed prior to answer to cure defective petition and preserve jurisdiction); *In re Gale,* 177 B.R. 531 (Bankr.E.D.Mich.1995) (determining that court has jurisdiction over involuntary joint petitions and may also allow the cure of a defective petition under Fed. R. Bankr.P. 7021); *In re Western Land Bank, Inc.,* 116 B.R. 721 (Bankr. C.D.Cal.1990) (dropping business entity from proceeding pursuant to Fed. R. Bankr.P. 7021 to preserve jurisdiction); *In re South Florida Title, Inc.,* 92 B.R. 548 (Bankr.S.D.Fla.1988) (dismissing one spouse pursuant to Fed. R. Bankr.P. 7021).

The cases espousing mandatory dismissal offer the compelling advantages of straightforward reasoning and certainty of result. This approach is aptly described by the court in *Gale:*

> The reasoning in *Jones* entails a simple, two-step process: (1) the court does not have subject matter jurisdiction over a joint involuntary case; and (2) lacking such jurisdiction, a court has no choice but to dismiss the case. *See Jones,* 112 B.R. at 773; *see also Benny,* 842 F.2d at 1149 (citing the Advisory Committee note to F.R. Bankr.P. 1011, which "states that an objection on the ground that a debtor is not amenable to an involuntary petition goes to subject matter jurisdiction and may be made at any time consistent with Fed.R.Civ.P. 12(h)(3)[, which in turn] provides that '. . . the court shall dismiss the action' " if there is no such jurisdiction).

177 B.R. at 533. If their premise of a lack of subject matter jurisdiction is sound, then bankruptcy courts must proceed with

great caution should they attempt to cure this defect by means of procedural rules. As Fed. R. Bankr.P. 9030 makes clear, "These rules shall not be construed to extend or limit the jurisdiction of the courts...." The Supreme Court recently revisited the interplay of bankruptcy procedural rules and jurisdiction (in the context of the filing deadlines prescribed in Fed. R. Bankr.P. 4004 and 9006(b)(3)) and again emphasized that only Congress may determine a lower federal court's subject-matter jurisdiction. *Kontrick v. Ryan*, —— U.S. ——, ——, 124 S.Ct. 906, 914, 157 L.Ed.2d 867 (2004). In its decision, the Supreme Court noted that, "[c]haracteristically, a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct ...." *Id.* at 916.

Nevertheless, other courts have recognized that the procedural straight jacket imposed by the mandatory dismissal approach tends to advance form over substance and, in some cases, may produce unjust or prejudicial consequences. *See, e.g., In re Benny*, 842 F.2d at 1147 (overruling an objection based on lack of jurisdiction when the issue was not raised until 18 months after commencement of the involuntary chapter 7 case and more than one year after the voluntary conversion to a chapter 11 case); *Bank of America, N.A. v. Weese*, 277 B.R. at 242 (reversing an order of dismissal where dismissal of the joint involuntary petition would have jeopardized recovery of millions of dollars fraudulently transferred to an offshore trust); *In re Gale*, 177 B.R. at 536 (holding that the "[t]he reluctance to honor form over substance should be particularly acute when dealing with a bankruptcy petition, as dismissal and the subsequent filing of a new petition could have a significant impact on the trustee's ability to challenge pre-petition property transactions"). The same concerns noted in these cases are raised by the petitioners in the instant case who allege that dismissal of the joint petition will be prejudicial to unsecured creditors because a potential preference recovery will be lost.

As briefly discussed above, the majority of courts addressing these issues have assumed that the court lacks subject matter jurisdiction over joint involuntary petitions, and have then proceeded to grapple with various means by which a court might be allowed to cure such a defect short of dismissal of the entire case. In explaining the rationale for allowing such a jurisdictional cure despite the apparent mandate of dismissal under Fed.R.Civ.P. 12(h)(3), a number of these courts make comparison to the fairly routine practice of employing procedural rules to drop dispensable parties to a lawsuit so as to maintain diversity jurisdiction under 28 U.S.C. § 1332.[2] *See, e.g., Bank of America, N.A. v. Weese*, 277 B.R. at 243; *In re Gale*, 177 B.R. at 533.

In the bankruptcy context, courts have allowed the cure of the defect by means of amendment under Fed. R. Bankr.P. 7015(a) or the misjoinder remedy provided by Fed. R. Bankr.P. 7021. Fed. R. Bankr.P. 1018, governing contested involuntary petitions and the applicability of the rules in Part VII, does not include Fed. R. Bankr.P. 7021 among those applicable to such proceedings. However, the rule allows for judicial discretion in directing the application of other rules. A number of courts have discerned this to be the most direct and appropriate approach and have chosen to apply Fed. R. Bankr.P.

---

**2.** The United States Supreme Court condoned this practice in *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) and recently acknowledged its continuing vitality in *Grupo Dataflux v. Atlas Global Group, L.P.*, —— U.S. ——, ——, 124 S.Ct. 1920, 1925, 158 L.Ed.2d 866 (2004).

7021 to dismiss a party or sever the claims. *In re Gale,* 177 B.R. at 536; *In re Western Land Bank, Inc.,* 116 B.R. at 725.

The analysis in these cases is persuasive with respect to the means and justification for curing the procedural problems created by a joint involuntary petition. However, the court does not agree with the decisions' characterization of the curative measures as equitable exceptions to mandatory dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(h)(3). Instead, this court determines that it retains subject matter jurisdiction over a proceeding initiated by a joint involuntary petition, even if defective. Furthermore, the court agrees with the *Weese* and *Gale* courts that once proper subject matter jurisdiction is determined to exist in the first instance, bankruptcy courts, as a matter of course, may cure pleading defects through procedural rules.

To begin the analysis, it is important to note that not every statutory requirement is a matter of jurisdiction. Instead, subject matter jurisdiction involves two basic categories: "[F]irst, jurisdiction based on the nature of the parties, for example, citizens of different states; and second, jurisdiction based on the nature of the matter, such as questions arising under the laws of the United States." *In re Gale,* 177 B.R. at 534 (quoting Edward I. Niles, *Federal Civil Procedure,* ¶ 2.210 (2d ed.1992)). Or, as recently expressed by the Supreme Court, "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan,* — U.S. at —, 124 S.Ct. at 915.

There is no dispute that bankruptcy courts have jurisdiction over involuntary bankruptcy proceedings. Even the *Callo-*

*way* case, an exemplar of the mandatory dismissal approach and followed by other courts, recognizes initial subject matter jurisdiction: "This case was commenced by the filing of an involuntary petition. Therefore, this court has acquired subject matter jurisdiction." *In re Calloway,* 70 B.R. at 180. So, with respect to the "classes of cases" subject to the court's jurisdiction, the only contrary argument that presents itself is the exceedingly narrow and technical view that while the court has subject matter jurisdiction over involuntary proceedings instituted by a petition bearing one debtor name, it does not have jurisdiction over one instituted by a petition bearing two debtor names. Such a narrow construction is at odds with the broad jurisdictional grant contained in 28 U.S.C. § 1334(b): ". . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Consequently, this court rejects such a narrow view of subject matter jurisdiction.

The *Calloway* case and its progeny focus on the "persons" or "nature of the parties" aspect of jurisdiction, determining in effect that bankruptcy courts lacked jurisdiction because "two individuals as one entity can no more be an involuntary debtor in one case pursuant to one involuntary petition than can a farmer (11 U.S.C. § 303(a)), or a railroad under chapter 7 (11 U.S.C. § 109(b)(1))." *In re Calloway,* 70 B.R. at 180. While it is unnecessary to our current analysis to fully examine the suitability of these comparisons, it is worth noting that even an involuntary filing against a farmer has been found to be a waivable affirmative defense rather than a jurisdictional deficiency. *In re Frusher,* 124 B.R. 331 (D.Kan.1991).

Indeed, other bankruptcy courts have come to a conclusion similar to *Frusher* in

their determination that section 303 requirements are nonjurisdictional in nature and, consequently, section 303 defects in an involuntary petition can be cured or waived. For example, the Bankruptcy Court for the Northern District of Ohio concluded that petitioning creditors could waive their liens following the filing of the involuntary petition in order to meet section 303 requirements. *In re Everett,* 178 B.R. 132, 144 (Bankr.N.D.Ohio 1994). In allowing the defect to be cured, the court noted that "[t]he statutory elements set forth in § 303 'are not jurisdictional in the technical sense of subject matter jurisdiction, but are instead substantive matters which must be proved or waived for petitioning creditors to prevail in involuntary proceedings.'" *Id.* (quoting the Ninth Circuit's decision of *Rubin v. Belo Broadcasting Corp. (In re Rubin),* 769 F.2d 611 (9th Cir.1985)). This result is also supported by the Bankruptcy Court for the Eastern District of New York's decision in *In re Shapiro,* 128 B.R. 328 (Bankr.E.D.N.Y. 1991). In that decision, the court concluded that the three undisputed creditor requirement was not jurisdictional. *Id.* at 331. Consequently, such a defect can be waived if no timely objection is made. *Id.*

Furthermore, under 11 U.S.C. § 302(b), joint debtors are not treated as one entity as inferred by *Calloway,* but are merely allowed to file a joint petition, with consolidation of the two estates left for subsequent determination by the court.[3] *In re Gale,* 177 B.R. at 534. A bankruptcy court's personal jurisdiction over two individuals who file a joint petition is fundamentally the same as its personal jurisdiction over the same two individuals who file separately. The fact that the joint petition is involuntary does not somehow create a new "entity with respect to which the Court has no statutory authority to order relief" leading to a lack of subject matter jurisdiction. *Id.* at 535. Simply put, bankruptcy courts have jurisdiction over involuntary proceedings and over individuals who statutorily qualify for bankruptcy relief. The error in this case is one of joinder, not jurisdiction.

The court concludes that section 303 requirements for the filing of an involuntary petition are nonjurisdictional in nature. Consequently, the court may use its discretion under Fed. R. Bankr.P. 1018 and Fed. R. Bankr.P. 7021 to dismiss a party or sever the cases while retaining jurisdiction. *In re Gale,* 177 B.R. at 536; *In re Western Land Bank, Inc.,* 116 B.R. at 725. To avoid prejudice to the unsecured creditors, the court will exercise this discretion and sever the involuntary proceedings against the joint Debtors. The involuntary proceedings will be continued against each debtor in separate bankruptcy cases.[4]

## II. Other Requirements of Section 303

Because the court severs the proceedings against the joint Debtors, the separated cases meet the requirements of section 303(a). The court can now turn to the other defenses raised by the Debtors in their answer objecting to the petitioners' attempt to establish section 303 requirements. The first objection raised by the Debtors concerns whether or not the peti-

---

**3.** Section 302(b) states as follows: "After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." 11 U.S.C. § 302(b).

**4.** This remedy also comports with the sound policy of deciding cases on the merits rather than dismissing them for procedural reasons. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Reizakis v. Loy,* 490 F.2d 1132, 1135 (4th Cir.1974); *In re Gale,* 177 B.R. at 536.

tioners represent a sufficient number of creditors to file the involuntary petitions. Section 303(b) states, in pertinent part, that:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
>> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $11,625 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; [or]
>>
>> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $11,625 of such claims[.]
>>
>> . . . .

11 U.S.C. § 303(b). The Debtors assert that the petitioning creditors cannot be counted as "three or more entities" under section 303(b)(1) because they are related and have related debts. Consequently, the Debtors argue that the number of petitioning creditors is insufficient to commence an involuntary case. The court disagrees.

■■ First, the court notes that three petitioning creditors are not required to commence an involuntary bankruptcy case unless a debtor has twelve or more total qualifying creditors. *Compare* 11 U.S.C. § 303(b)(1) and (b)(2). If a debtor has fewer than twelve such creditors, then a single qualifying creditor is sufficient to commence the involuntary case. 11 U.S.C. § 303(b)(2); *In re Kidwell,* 158 B.R. 203,

208 (Bankr.E.D.Ca.1993). Because petitioning creditors are unlikely to have information on a potential debtor's other creditors, each debtor who asserts an insufficiency in the number of petitioning creditors must aver, in his or her answer, the existence of twelve or more creditors and file with the answer, "a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof." Fed. R. Bankr.P. 1003(b). This rule is in place to provide notice to creditors and, if necessary, provide an opportunity for other creditors to join in the involuntary petition pursuant to 11 U.S.C. § 303(c) and Fed. R. Bankr.P. 1003(b). *Kidwell,* 158 B.R. at 209; *In re Coppertone Communications, Inc.,* 96 B.R. 233, 234–36 (Bankr.W.D.Mo. 1989). In this case, the Debtors, while arguing an insufficiency in the number of petitioning creditors, did not aver to the existence of twelve or more creditors in their answer and failed to file the required list of their creditors pursuant to Rule 1003. [Doc. 11.] Furthermore, the Debtors' noncompliance with Rule 1003 requirements was raised by the petitioning creditors at the hearing when they called into question whether three or more petitioners were even necessary to commence the involuntary cases. [Tr., pp. 5, 14–17.] Debtors did not respond to the issue raised by the petitioners except to note that they did not believe the rule applied to their situation. [*Id.*] The Debtors submitted no evidence regarding the number of their creditors and did not provide the petitioning creditors with a list of creditor names and addresses. [*Id.*] Finally, the Debtors had an opportunity to address the issue of the number of their creditors and submit a creditor list after the hearing during post-hearing briefing. The Debtors, again, chose not to address the issue or comply with Rule 1003 in their post-hearing brief. [See Docs. 15 and 16.]

 While in some circumstances, courts have allowed debtors to amend their answers to comply with Rule 1003 (*see, e.g., Coppertone Communications,* 96 B.R. at 236), the Debtors in this case have missed several opportunities to establish that they have twelve or more qualifying creditors and file their list of creditors. Their failure to comply with these requirements in their answer, at the hearing on section 303 requirements and through the filing of post-hearing briefs leads the court to determine that the Debtors have waived any defense regarding the sufficiency of the number of petitioners in their bankruptcy cases. *See Kidwell,* 158 B.R. at 209 (noting that a defect in the three-petitioner requirement may be waived); *In re Hutter Associates, Inc.* 138 B.R. 512, 516 (W.D.Va.1992).[5]

### CONCLUSION

The court concludes that the petitioners have met their burden of proving all contested issues regarding the section 303 requirements. With respect to the monetary requirement under either section 303(b)(1) or (b)(2), the claims of all three

petitioners facially meet the requirement as listed on the involuntary petition [Doc. 1] and the Debtors did not raise this factor as an issue in either their answer or at the hearing. The Debtors raised no bona fide dispute as to payment of these claims and, furthermore, admitted that they are generally not paying their debts as they become due, a prerequisite to the court entering an order for relief in each case. 11 U.S.C. § 303(h).

As there are no other contested issues, the court GRANTS the petitioning creditors' motion to sever the bankruptcy cases against the Debtors [Doc. 14] and will further grant orders for relief in both involuntary Chapter 7 cases. Following the petitioning creditors' filing of the amended involuntary petitions, and additional filing fee, the court will enter orders for relief in both cases referring back to the original petition filing date of February 6, 2004.

**SO ORDERED.**

---

5. Even if three qualifying creditors had been necessary to commence the involuntary proceeding under section 303(b)(1), the evidence at the hearing supports that the three petitioners would meet this requirement. The Debtors' sole objection to the petitioners' qualifying status was the nature and relatedness of the petitioners and their claims. While it is true that Peoples Bank, N.A. has a claim against the Debtors on a cognovit note and U. Timothy Juergens' claim is based on his guaranty of the same note, both Peoples Bank and U. Timothy Juergens' claims have been reduced to separate sums certain in judgments. [Tr. pp. 23–24; Exs. 1 and 2.] Consequently, the two creditors do not share one joint claim with one right to payment as argued by the Debtors. *See In re McMeekin,* 18 B.R. 177, 178 (Bankr.D.Mass.1982). Instead, the petitioners have separate rights to payment on their judgments and separate claims under 11 U.S.C. § 101(5). *See In re Mid–America Industrial, Inc.,* 236 B.R. 640, 645 (Bankr.

N.D.Ill.1999) (even if two petitioning creditors are owed by the debtor under one judgment or agreement, the creditors are separate for counting purposes under § 303(b) if the judgment or agreement creates separate or easily divisible obligations to these creditors); *In re Richard A. Turner Co., Inc.,* 209 B.R. 177, 179–80 (Bankr.D.Mass.1997).

Furthermore, the petitioners established that U. Timothy Juergens and Juergens, Wilt & Strileckyj are separate entities with separate claims for counting purposes. While U. Timothy Juergens had been an attorney with a predecessor law firm to Juergens, Wilt & Strileckyj, Valerie Wilt, a partner at the present law firm, testified that Mr. Juergens' stake in the firm had been bought out in 1999 and that he retired from the firm. [Tr. pp. 27–32; Ex. 3.] Furthermore, the testimony established that the law firm was owed $34,337.66 by the Debtors on an account receivable and was a separate claim from that of U. Timothy Juergens on his guaranty / judgment. [*Id.,* p. 32.]